SUSAN SINCLAIR McALLISTER ROBERTS, PLAINTIFF-APPELLANT V.
MICHAEL W. McALLISTER, DEFENDANT-APPELLEE

No. COA04-1045

(Filed 15 November 2005)

## 1. Child Support, Custody, and Visitation— deviation from child support guidelines—imputing minimum income

The trial court did not abuse its discretion by deviating from the North Carolina Child Support Guidelines based on the reasonable needs of the children and by imputing minimum income to plaintiff mother who is voluntarily unemployed, because plaintiff's support for the children has been negligible including that: (1) although plaintiff had the financial ability, she did not establish any residence in Charlotte where the children lived and only exercised visitation when she had the children flown to Maryland even though the 3 September 2002 custody order provided that the parties could share the placement of the children equally if plaintiff established a part-time residence in Charlotte; and (2) although plaintiff testified the children's school schedule enabled her to spend 135 overnights with the children, she did not meet the goal of shared physical custody as she had only seen the children in Maryland an average of one weekend per month over the previous year. The trial court made specific findings of fact as to the parties' ability to pay as well as the reasonable needs of the parties' three children.

## 2. Child Support, Custody, and Visitation— support amount— failure to make sufficient findings of fact

The trial court erred by entering an order requiring plaintiff mother to pay child support for the parties' three children in the amount of $800 per month and by awarding defendant husband $800 per month in child support for the thirteen months between the date of entry of the child custody order and the date of the support hearing, because: (1) N.C.G.S. § 50-13.4(c) provides that if the court orders an amount other than the amount determined by application of the presumptive guidelines, the court shall make findings of fact as to the criteria that justify the basis for the amount ordered; and (2) while the trial court's findings were sufficient to support deviation, the findings were insufficient to indicate the basis for the award of support in the amount of $800 as required by N.C.G.S. § 50-13.4.

ROBERTS v. McALLISTER

[174 N.C. App. 369 (2005)]

**3. Child Support, Custody, and Visitation— uninsured medical expenses—failure to show abuse of discretion**

The trial court did not err by requiring plaintiff mother to pay one-half of the uninsured medical expenses for the minor children, because: (1) it is in the trial court's discretion to determine a fair sharing arrangement for uninsured medical expenses; (2) in deviation cases where assets, estates, and incomes are taken into consideration, it is proper for the trial court to use methods other than a comparative income analysis; and (3) plaintiff failed to show an abuse of discretion.

**4. Child Support, Custody, and Visitation— attorney fees— reimbursement**

The trial court did not abuse its discretion in a child support case by ordering plaintiff mother to reimburse defendant father for half of his attorney fees, because: (1) N.C.G.S. § 50-13.6 grants the trial court discretion to award reasonable attorney fees to an interested party acting in good faith who has insufficient means to defray the expense of the suit; (2) the trial court made specific findings as to defendant's inadequate monthly income, that his attorney fees were reasonable, and that such fees were increased as a result of plaintiff's failure to contribute a reasonable sum to the support of the children after being asked to do so; and (3) the trial court concluded defendant did not have sufficient assets to pay his attorney fees and plaintiff has the means to pay half.

Judge JACKSON concurring in part and dissenting in part.

Appeal by plaintiff from an order dated 23 December 2003 by Judge Rebecca B. Knight in Buncombe County District Court. Heard in the Court of Appeals 19 April 2005.

*Wyrick, Robbins, Yates & Ponton, L.L.P., by K. Edward Greene, and Heidi C. Bloom, for plaintiff-appellant.*

*Ingrid K. Friesen, P.A., by Ingrid K. Friesen, for defendant-appellee.*

BRYANT, Judge.

Susan Sinclair McAllister Roberts (plaintiff) appeals from an order dated 23 December 2003 awarding Michael W. McAllister (defendant) child support in the amount of $800.00 per month for

their three children, half of the uninsured medical expenses for their children and attorneys' fees in the amount of $2,500.00.

Plaintiff and defendant were married on 7 February 1987 and separated on 7 July 1999 when defendant left the marital home. Plaintiff and defendant are the parents of three minor children: a son born 25 May 1993; a daughter born 29 January 1995; and another daughter born 4 October 1997. Plaintiff has a bachelor's degree in journalism from the University of North Carolina and for the first five years of the parties' marriage, she worked in various public relations positions. The maximum income plaintiff earned was $25,000.00 in 1993, which was the last year plaintiff worked during the marriage. By mutual agreement of the parties, plaintiff did not work outside the home following the birth of their first child in 1993. During the marriage, plaintiff was a homemaker, the children's primary caregiver, and their home-school teacher. For the duration of the marriage, plaintiff, defendant and the three minor children lived solely on defendant's income, which at the time of the parties' separation was $39,000.00. Following their separation, plaintiff and defendant agreed plaintiff would not return to work until the youngest child started kindergarten in August 2003.

Defendant remarried in March 2001 and lives in Charlotte. Together, defendant and his wife have a daughter who was born 21 May 2000. Defendant's wife has primary custody of her two children from her first marriage. Following the entry of the McAllister custody order in September 2002, defendant, his wife and their six children all live primarily together. Defendant is employed at York Technical College, earning approximately $40,000.00 per year. Defendant's gross income per month is $3,351.33 and his net income is $2,575.00 per month. Defendant maintains health insurance for his wife and their six children at a cost of $254.00 per month.

In December 2000, plaintiff remarried a physician, Scott Roberts and moved to Rockville, Maryland. After a few years, they returned to Asheville, North Carolina, where Dr. Roberts earned approximately $300,000.00 per year. In June 2003, plaintiff and Dr. Roberts had a son. Plaintiff intends to stay home and provide full time care for their son, until he is at least school age. Plaintiff's estate consists of a savings account of $3,500.00 and a checking account with approximately $30,000.00, both of which are joint accounts with Dr. Roberts. Plaintiff and Dr. Roberts also have a joint account containing $50,000.00 in proceeds from the sale of their Maryland house. Dr. Roberts also receives $300.00 per month from the sale of the home he

owned prior to his marriage to plaintiff. Plaintiff has no income, and aside from the joint accounts, she has a one-fifth interest of undetermined value in her deceased mother's home.

On 20 August 1999 plaintiff filed a complaint against defendant seeking child custody, child support, postseparation support, alimony, equitable distribution and attorneys' fees. Defendant filed an answer and counterclaim on 7 October 1999, asserting his own claims for child custody, child support and equitable distribution. On 13 July 2000 plaintiff and defendant entered into a consent judgment resolving the issues of equitable distribution, child custody, child support arrearages, prospective child support, postseparation support, and alimony. Pursuant to the 13 July 2000 order: plaintiff was awarded, *inter alia*, primary custody of the parties' three children; $18,800.00 from defendant for the payment of back child support and lump sum alimony; a portion of the proceeds from the sale of their home; and defendant was ordered to pay plaintiff $875.00 per month in child support.

On 11 April 2002 defendant filed a motion to modify the custody order of 13 July 2000. Plaintiff filed her own motion to modify child custody on 8 May 2002. On 3 September 2002, the trial court entered an order modifying the July 2000 order by awarding the parties joint legal and physical custody. The 3 September 2002 order suspended defendant's obligation to pay child support.

On 9 October 2002 plaintiff filed a motion in the cause requesting a modification of the 3 September 2002 order to clarify the circumstances of her parenting time; specifically, whether the children could visit her in Maryland. On 16 October 2002, defendant filed a response as well as a motion for child support. On 30 July 2003 defendant filed a notice of intent to deviate from guidelines and on 18 September 2003 counsel for defendant filed an affidavit of attorneys' fees. On 23 December 2003, the trial court entered an order requiring plaintiff to pay defendant $800.00 per month as prospective child support. The trial court further ordered plaintiff to pay defendant $10,400.00 for child support arrearages accruing from September 2002 through the date of the support hearing and attorneys' fees in the amount of $2,500.00. Plaintiff appeals.

The issues on appeal are whether the trial court: (I) abused its discretion in deviating from the N.C. Child Support Guidelines; (II) erred by entering an order requiring plaintiff to pay child support;

**ROBERTS v. McALLISTER**

[174 N.C. App. 369 (2005)]

(III) erred by awarding defendant $800.00 per month in child support for the thirteen months between the date of entry of the custody order and the date of the support hearing; (IV) erred in requiring plaintiff to pay one-half of the uninsured medical expenses for the minor children; and (V) abused its discretion in ordering plaintiff to reimburse defendant for his attorneys' fees.

I

[1] The first issue plaintiff raises on appeal is whether the trial court abused its discretion in deviating from the N.C. Child Support Guidelines (Guidelines). Plaintiff argues the trial court erred in imputing minimum income to plaintiff and then concluding application of the Guidelines would not meet the reasonable needs of the children.

Under N.C. Gen. Stat. § 50-13.4(c), a court "shall determine the amount of child support payments by applying the presumptive guidelines established pursuant to subsection (c1) of this section." N.C.G.S. § 50-13.4(c) (2003). Child support set in accordance with the Guidelines "is conclusively presumed to be in such amount as to meet the reasonable needs of the child and commensurate with the relative abilities of each parent to pay support." *Buncombe County ex rel. Blair v. Jackson,* 138 N.C. App. 284, 287, 531 S.E.2d 240, 243 (2000). The trial court may, however, deviate from the Guidelines if:

> after considering the evidence, the Court finds by the greater weight of the evidence that the application of the guidelines would not meet or would exceed the reasonable needs of the [children] considering the relative ability of each parent to provide support or would be otherwise unjust or inappropriate . . . .

N.C.G.S. § 50-13.4(c) (2003). In deviating from the Guidelines, the trial court must follow a four-step process:

> First, the trial court must determine the presumptive child support amount under the Guidelines. Second, the trial court must hear evidence as to the reasonable needs of the [children] for support and the relative ability of each parent to provide support. Third, the trial court must determine, by the greater weight of this evidence, whether the presumptive support amount would not meet or would exceed the reasonable needs of the [children] considering the relative ability of each parent to provide support or would be otherwise unjust or inappropriate. Fourth, following its determination that deviation is warranted, in order to allow

effective appellate review, the trial court must enter written findings of fact showing the presumptive child support amount under the Guidelines; the reasonable needs of the [children]; the relative ability of each party to provide support; and that application of the Guidelines would exceed or would not meet the reasonable needs of the [children] or would be otherwise unjust or inappropriate.

*Spicer v. Spicer*, 168 N.C. App. 283, 292, 607 S.E.2d 678, 685 (2005) (citation omitted). Our Supreme Court has explained that "an order for child support must be based upon the interplay of the trial court's conclusions of law as to (1) the amount of support necessary to 'meet the reasonable needs of the child' and (2) the relative ability of the parties to provide that amount." *Coble v. Coble*, 300 N.C. 708, 712, 268 S.E.2d 185, 189 (1980). These conclusions must in turn be based on factual findings "specific enough to indicate to the appellate court that the judge below took due regard of the particular estates, earnings, conditions, [and] accustomed standard of living of both the child and the parents." *Id.* (internal quotation marks omitted). In reviewing child support orders, our review is limited to a determination whether the trial court abused its discretion. *Leary v. Leary*, 152 N.C. App. 438, 441, 567 S.E.2d 834, 837 (2002). Under this standard of review, the trial court's ruling will be overturned only upon a showing that it was so arbitrary that it could not have been the result of a reasoned decision. *Id.* The trial court must, however, make sufficient findings of fact and conclusions of law to allow the reviewing court to determine whether a judgment, and the legal conclusions that underlie it, represent a correct application of the law. *Id.* at 441-42, 567 S.E.2d at 837.

In the case *sub judice*, the trial court made very extensive findings of fact. The trial court found, in pertinent part, the following:

4. The [defendant] father earns $3,351.33 per month from his employment at York Technological College in South Carolina. His net pay is $2,575.28 per month.

5. The defendant father's household consists of the defendant; his wife[]; their daughter[]; [the new wife's two] children[] and the three [McAllister children]. [Defendant's new wife] works part time and earns $333.00 per month.

6. The defendant[] provides health insurance for the . . . six children and [his new] wife. This will increase to $254.00 per

month effective December 1, 2003. The defendant father has obtained some dental insurance coverage effective September 2003 at a cost of $50.00 per month that will cover all eight family members. . . . The children's health insurance expenses now total $127.61.

. . .

8. Defendant's household expenses are as follows: The mortgage payment is $1,100.00 per month, the car payment is $132.00 per month; transportation expenses are $54.00 per month; utilities total $482.00 per month; food and school lunches are $1,866.00 per month; the total household expenses (housing, utilities, vehicle and food) shared by the eight family members ·are $3,634.00 per month. These expenses do not include any expenses related to specific individuals, but are the expenses for all of the persons in the household. These expenses are substantial, but in light of the fact the household consists of six children and two adults, they do not appear to be unreasonable or inflated. The only reasonable way to determine the children's expenses for shelter, food and transportation, is to divide those total household expenses by the number of household members. Three-eights [sic] of that expense is $1,362.75 per month.

. . .

10. The reasonable needs of the three [McAllister] children, . . . for health, education, and maintenance, **total $2087.36**, as follows: $597.00 are for specific child related expenses[,] $1,362.75 represent the children's share of the total household expenses. $127.61 is the monthly health insurance expense for the children.

. . .

15. [P]laintiff . . . has had previous high risk pregnancies, and miscarriages . . . and prevented her from having the ability to work. Her infant[] is three months old as of the date of the hearing. [Plaintiff's] husband, Scott Roberts, is a physician who earned $300,000 per year and recently relocated to Asheville, North Carolina[.] Scott Roberts pays all of the living expenses for [plaintiff] and [their son] and does not request or expect any contribution from [plaintiff] for household expenses. [They agree] that Scott Roberts will provide

financial support and work outside the home and [plaintiff] will stay at home and provide full time care of [their son].

16. [Plaintiff] has assets as part of her financial estate, that include:

(A) A marital interest in joint accounts with Scott Roberts totaling $33,500.00. This account may include amounts deposited by [p]laintiff during her marriage to Scott Roberts, including:

1. $75,000.00-$80,000.00 lump sum payment received after the sale of the marital home owned with defendant . . . [which] represented a 55% share of the marital estate in equitable distribution settlement, a lump sum alimony payment and child support arrears. The marital property was divided by consent agreement. . . .

2. Proceeds from the sale of 1987 Honda after her marriage to Scott. The plaintiff does not know the sale price of the Honda.

3. $20,000.00 cash inherited from her mother and deposited during the summer of 2003.

(B) A marital interest in Closing proceeds totaling $50,000.00 Cash from the July 2003 sale of . . . the [Maryland] marital home of Scott and [plaintiff] that was . . . sold in July 2003 for $490,000.00. **The cash is in a joint account with her husband.**

(C) 1/5 interest in [plaintiff's] mother's home in Concord [which is for sale]. The plaintiff does not know the fair market value of her mother's home.

(D) A marital interest in $300.00 per month income from sale of real property in Haw Creek.

(E) Plaintiff currently has no debt.

. . .

19. [P]laintiff is voluntarily unemployed. [Plaintiff and defendant] had agreed . . . plaintiff would not work outside the home after their first child was born. [Plaintiff and] Dr. Roberts, have agreed [she] would not work outside the home after their marriage. The plaintiff has no intentions to obtain em-

ployment and had no intention to obtain employment after the entry of the September 2003 custody order prior to becoming pregnant in the fall of 2002.

. . .

23. Since there is no "recent work history", the [c]ourt can not impute potential income based on [plaintiff's] 1993 employment at Concord Hospital earning $25,000.00 per year. The evidence suggests an employee with [] plaintiff's educational background could obtain employment in the Charlotte area earning $35,000.00 per year but there is no evidence concerning prevailing job opportunities and earning levels in Maryland (August 2003) or in Buncombe County (September 2003). The guidelines provide "If the parent has no recent work history or vocational training, potential income should not be less than minimum hourly wage for a 40 hour week." The Court has calculated the support using minimum wage, but has no reasonable basis sum in excess of minimum wage. To use any other sum would be arbitrary.

. . .

25. The child support guidelines are inequitable and inadequate to meet the reasonable needs of [the McAllister children] for several reasons: First, it is unjust to the [sic] give the plaintiff a deduction of $765.00 from her income for the support of her [and Scott's] son. Scott's extremely high income of $25,000.00 per month establishes a very high support amount regardless of the plaintiff's income being minimum wage or even $35,000.00 per year. The $765.00 for a three month old baby exceeds the guideline amount of support of $266.00 for [the McAllister children], three school aged children with significantly higher financial needs for their support. In addition, Scott and the plaintiff have a marital agreement that the plaintiff will not be asked or expected to contribute to any of the financial support for [their son] or the marital household. Scott provides 100% of [their son's] and the plaintiff's financial support and is more than able to do so. Secondly, the actual needs of the [McAllister] children, . . . greatly exceed the guideline amount. In addition, the defendant is unable to bear the financial responsibility for these children without contribution from the plaintiff. The plaintiff's attitude that the defendant needs to live within his means without incur-

ring credit card and other debt is naive and unrealistic. The plaintiff has a significant cash estate of her own monies, and her marital interest in joint assets, that she could use to pay a reasonable portion of the care of the children.

(Emphasis in original). Based on these findings, the trial court made the following conclusions:

5. The plaintiff has the ability to contribute $800.00 per month to the support of the [McAllister] children and that sum constitutes a deviation from the child support guidelines.

6. Application of the guidelines would not meet the reasonable needs of the [McAllister] children, considering the relative ability of each parent to provide support and would be other wise unjust or inappropriate.

The determination of whether to impute income to a parent who is voluntarily unemployed is a determination based in part on the conduct of the parent. *Wolf v. Wolf*, 151 N.C. App. 523, 566 S.E.2d 516, (2002). In *Wolf* the Court cited these factors to be considered when determining whether a parent had disregarded marital and parental obligations:

(1) failing to exercise [her] reasonable capacity to earn,

(2) deliberately avoiding [her] family's financial responsibilities,

(3) acting in deliberate disregard for [her] support obligations,

(4) refusing to seek or to accept gainful employment,

(5) willfully refusing to secure or take a job,

(6) deliberately not applying [herself] to [her] business,

(7) intentionally depressing [her] income to an artificial low, or

(8) intentionally leaving [her] employment to go into another business.

*Wolf* at 527, 566 S.E.2d at 518-19 (citing *Bowes v. Bowes*, 287 N.C. 163, 171-72, 214 S.E.2d 40, 45 (1975)). In order to base an award on earning capacity "the finder of fact must have before it sufficient evidence of the proscribed intent. Intent being a mental attitude, it must ordinarily be proven, if proven at all, by circumstantial evidence, that is, by proving facts from which the fact sought to be proven may be inferred." *Bowes* at 173-74, 214 S.E.2d at 46. Further, a determination

of bad faith in conjunction with suppression of income is best made on a case-by-case basis. *Pataky v. Pataky*, 160 N.C. App. 289, 307, 585 S.E.2d 404, 415 (2003).

In the case *sub judice*, the trial court found that "[plaintiff] also failed to seek or obtain employment . . . . There is no evidence that she was withholding support to hurt or punish her children but she clearly has a naive indifference to their need for financial support from her." This "naive indifference" prompted the trial court to conclude that plaintiff's indifference to the children's need for support was intentional and willful avoidance and showed a deliberate disregard of her responsibility to support her children. Because plaintiff had not been employed for eleven years, the trial court imputed income to her as allowed by the Child Support Guidelines in the amount of minimum wage. *See Mittendorff v. Mittendorff*, 133 N.C. App. 343, 515 S.E.2d 464 (1999) (holding the burden was on the non-custodial mother to prove that the she had acted in good faith in taking a lower paying job in seeking a reduction of child support based on her reduction in income).

Plaintiff argues that minimum wage income should not be imputed to her because she was unemployed due to several miscarriages and a high-risk pregnancy. The trial court, however, found plaintiff has consistently testified that she had no intention of working, and that her subsequent pregnancies were initiated after the 3 September 2002 child custody order required plaintiff "to establish a part time residence in Charlotte" where defendant lived. Plaintiff cites *Pataky*, in support of the proposition that she should not be deemed to be acting in bad faith merely because she was unemployed by choice. However, *Pataky* is distinguishable. In that case, after the parties entered into a shared physical custody agreement, defendant gave notice of his intention to quit his computer programming job earning $65,000 annually to pursue a graduate degree in school counseling. *Pataky* at 291, 585 S.E.2d at 406. Further, defendant had developed a plan to meet his financial obligations to his children while he attended school. *Id.* In *Pataky*, the Court recognized that where a defendant becomes unemployed by choice in order to become a fulltime student, there may not be bad faith if he continues to provide adequate support for his children. The *Pataky* Court found that the defendant continued to provide for the support of his children during the period he had fifty percent physical custody of his children and abided by his agreement with the child's mother. *Id.* at 308, 585 S.E.2d at 416.

In the instant case, plaintiff's support for the children has been negligible. The 3 September 2002 custody order provided that plaintiff and defendant could share the placement of the children equally if the plaintiff established a part time residence in Charlotte. The trial court found that although plaintiff had the financial ability she "did not establish any residence in Charlotte and only exercised visitation when she [had] the children flown to Maryland." Although plaintiff testified the children's school schedule enabled her to spend 135 overnights with the children, the evidence showed she did not meet the goal of shared physical custody, as she had only seen the children in Maryland an average of one weekend per month over the previous year. In calculating a guideline amount of child support, the court calculated a deduction for her newborn son and still determined "the guidelines are inequitable and inadequate to meet the needs of the [McAllister] children." The trial court made specific findings of fact as to the parties' ability (and inability) to pay as well as the reasonable needs of the three McAllister children. The trial court followed the *Spicer* four-step test and made the necessary findings of fact to support deviation from the Guidelines. This assignment of error is overruled.

## II & III

**[2]** Plaintiff also argues the trial court erred by entering an order requiring plaintiff to pay child support for her and defendant's three children in the amount of $800 per month. Further, plaintiff contends the trial court in effect compounded the error by awarding defendant $800.00 per month in child support for the thirteen months between the date of entry of the custody order and the date of the support hearing.

N.C.G.S. § 50-13.4(c) states "[i]f the court orders an amount other than the amount determined by application of the presumptive guidelines, the court shall make findings of fact as to the criteria that justify . . . the basis for the amount ordered." However, the trial court's findings of fact fail to state its basis for the determination of the **amount** ordered as required by the Statute. Here, the trial court found the reasonable needs of the children to be $2,087.36 per month. In deviating from the Guidelines, the trial court imputed minimum wage income to plaintiff based on a forty-hour work week. Further, the trial court factored in plaintiff's ability to pay based on the contributions of plaintiff's husband who earned over $20,000.00 per month. While the trial court's findings were sufficient to support deviation, the findings were not sufficient to indicate the basis for the

award of support in the amount of $800.00 as required by N.C.G.S. § 50-13.4. Accordingly, we reverse and remand for further findings of fact to support the basis of the amount of the child support award.

## IV

**[3]** Plaintiff next argues the trial court erred in requiring plaintiff to pay one-half of the uninsured medical expenses for the minor children.

It is in the discretion of the trial court to determine a fair sharing arrangement for the uninsured medical expenses. *Lawrence v. Nantz*, 115 N.C. App. 478, 482, 445 S.E.2d 87, 90 (1994) (apportionment of medical expenses between parents factored in their respective incomes, assets and expenses, to order defendant to pay pro rata share of monthly payments). In deviation cases, where assets and estates and incomes are all taken into consideration, it is perfectly proper for the court to use methods other than a comparative income analysis. *Id.*

In August 2002, the trial court ordered plaintiff and defendant to split equally the children's medical expenses when custody was modified. The trial court, in its discretion, did not change this formula at the hearing in 2003. Plaintiff has failed to show an abuse of discretion. This assignment of error is overruled.

## V

**[4]** Plaintiff's final argument on appeal is that the trial court abused its discretion in ordering plaintiff to reimburse defendant for his attorneys' fees.

Pursuant to N.C. Gen. Stat. § 50-13.6, the trial court has the discretion to award reasonable attorneys' fees "to an interested party acting in good faith who has insufficient means to defray the expense of the suit." N.C.G.S. § 50-13.6 (2003). "An award of attorneys' fees will be stricken only if the award constitutes an abuse of discretion." *Clark v. Clark*, 301 N.C. 123, 136, 271 S.E.2d 58, 67 (1980).

Specifically, plaintiff challenges finding of fact number twenty-six, alleging it is not supported by competent evidence:

The defendant has incurred $5,035.32 in legal fees in connection with the motion for child support. These legal fees are reasonable. The costs were increased due to the plaintiff's failure to contribute a reasonable sum to the support of the children after

being asked to do so. The defendant is not financially able to pay for all of his legal expense at this time.

Here the trial court made specific findings as to defendant's inadequate monthly income, that his attorneys' fees were reasonable and that such fees were increased as the result of plaintiff's "failure to contribute [] a reasonable sum to the support of the children after being asked to do so." In addition, the trial court concluded defendant did not have sufficient assets to pay his attorneys' fees and plaintiff had the means to pay half. Further, defendant's attorney submitted an affidavit to the trial court in September 2003 and indicated her representation of defendant, the extent of her representation, the nature and amount of her legal work and her skill level and hourly wage. The trial court found the $5,035.32 attorneys' fees to be reasonable. These findings are supported by competent evidence in the record. Accordingly, the trial court did not abuse its discretion in ordering plaintiff to pay one-half of defendant's attorneys' fees. This assignment of error is overruled.

Affirmed in part, reversed and remanded in part.

Judge WYNN concurs.

Judge JACKSON concurs in part, dissents in part.

JACKSON, Judge, concurring in part and dissenting in part.

I concur with the majority in its holdings affirming the payment of half of the children's uninsured medical expenses and the payment of defendant's attorneys' fees. However, I respectfully dissent from the portion of the majority opinion holding that the trial court properly deviated from the North Carolina Child Support Guidelines.

The majority correctly states that the trial court must follow a four-step process in order to deviate from the North Carolina Child Support Guidelines. While I agree with the majority that the trial court adequately followed the first three of these steps, I disagree that it sufficiently followed the final step to allow this Court to conduct an effective review of its decision. This final step requires the trial court to make "written findings of fact showing the presumptive child support amount under the Guidelines; the reasonable needs of the [children]; the relative ability of each party to provide support; and that application of the Guidelines would exceed or would not

**ROBERTS v. McALLISTER**

[174 N.C. App. 369 (2005)]

meet the reasonable needs of the [children] or would be otherwise unjust or inappropriate." *Spicer v. Spicer*, 168 N.C. App. 283, 292, 607 S.E.2d 678, 685 (2005) (citation omitted). Failure to make findings of fact, which are adequate to allow sufficient appellate review, regarding this issue requires that the case be remanded to the trial court for further findings of fact. *Gowing v. Gowing*, 111 N.C. App. 613, 432 S.E.2d 911 (1993).

The trial court's finding of fact pertaining to the presumptive child support amount was sufficient, as it demonstrated that plaintiff's support obligation pursuant to the guidelines would be $50.00— the minimum support obligation provided for by the guidelines, regardless of whether income was imputed to her or not. However, I would hold that the trial court's findings of fact as to the remaining considerations were insufficient.

In its findings of fact relative to the reasonable needs of the children, the trial court made the following finding of fact:

> Defendant's household expenses are as follows: The mortgage payment is $1,100.00 per month, the car payment is $132.00 per month; transportation expenses are $54.00 per month; utilities total $482.00 per month; food and school lunches are $1,866.00 per month; the total household expenses (housing, utilities, vehicle and food) shared by the eight family members are $3,634.00 per month. These expenses do not include any expenses related to specific individuals, but are the expenses for all of the persons in the household. These expenses are substantial, but in light of the fact the household consists of six children and two adults, they do not appear to be unreasonable or inflated. The only reasonable way to determine the children's expenses for shelter, food and transportation, is to divide those total household expenses by the number of household members. Three-eights of that expense is $1,362.75 per month.

Because defendant's new wife, new child and two step-children also lived in the house, use of this division of expenses is impermissible as it potentially imposes a support obligation on plaintiff for members of the household other than plaintiff's children. *Evans v. Craddock*, 61 N.C. App. 438, 441, 300 S.E.2d 908, 911 (1983). The use of this impermissible allocation results in the trial court's findings of fact regarding the reasonable needs of the children being inadequate to allow this Court to review the trial court's ultimate determination.

Accordingly, I would remand this case for further findings of fact regarding the reasonable needs of the McAllister children.

In addition, I would hold that the trial court's findings of fact regarding plaintiff's ability to provide support are insufficient. In its findings regarding plaintiff's estate, earnings and condition, the trial court emphasizes the substantial income of plaintiff's current husband even though he has no support obligation to the McAllister children—the children in question here. *Duffey v. Duffey*, 113 N.C. App. 382, 384, 438 S.E.2d 445, 447 (1994). The North Carolina Child Support Guidelines specifically exclude the income of a parent's new spouse from the calculation of that parent's income for support purposes. AOC-A-162, Rev. 10/02 p. 3. Nonetheless, it was proper for the trial court to note that plaintiff's new husband provided for all of her expenses as that fact bears directly upon her condition. When the new spouse provides for all expenses, the support obligation may be calculated without deducting expenses from the supporting parent's income. *Hamilton v. Hamilton*, 57 N.C. App. 182, 184, 290 S.E.2d 780, 781 (1982). Further, "the contributions of a third party may be used to support deviation from the child support guidelines." *Guilford County by & Through Child Support Enforcement Agency v. Easter*, 344 N.C. 166, 171, 473 S.E.2d 6, 9 (1996).

In its findings regarding plaintiff's estate, the trial court found that plaintiff had marital interests in: joint accounts with her new husband with balances totaling $33,500.00; another account consisting of proceeds from the sale of the Robert's marital home in Maryland valued at $50,000.00; and $300.00 per month in rental income. The trial court went on to find that the joint accounts *may* have included amounts deposited by plaintiff representing a $75,000.00-80,000.00 lump sum payment received by plaintiff as an equitable distribution settlement, a lump sum alimony payment, and child support arrears, all from defendant. The trial court made no specific findings as to how much of the lump sum payment was attributable to the alimony or child support arrears. The trial court further found that the account balances also might have reflected deposits from the proceeds of the sale of plaintiff's car—for which no value was found—and a $20,000.00 cash inheritance plaintiff received from her mother's estate. No findings of fact were made that account for the extreme disparity between the amounts possibly contributed to the accounts by plaintiff (at least $95,000.00-100,000.00) and the current balance or balances of $35,000.00. Also included in plaintiff's estate by the trial court was a one-fifth interest in her mother's home

**ROBERTS v. McALLISTER**

[174 N.C. App. 369 (2005)]

of indeterminate value. Given this lack of specificity, I would hold that it is impossible for this Court to make a sufficient determination of the value of plaintiff's estate and its corresponding effect on her ability to pay support for her children from these findings.

With regard to plaintiff's ability to pay support, I would hold that the trial court erred in imputing income to plaintiff. The North Carolina Child Support Guidelines require that a parent's voluntary unemployment or underemployment be the result of the "parent's bad faith or deliberate suppression of income to avoid or minimize his or her child support obligation . . . ." AOC-A-162, Rev. 10/02 p. 3.

The trial court made findings of fact relating to plaintiff's lack of recent employment history and the fact that her unemployment had been, and continues to be, the result of her decision not to work until her children reach school age. The trial court further found that plaintiff had no intention of obtaining employment, consistent with her decision to stay home with her children considering the fact that she had a three-month-old child at the time of the hearing. This decision reflects a personal choice made jointly with each spouse during the course of their respective marriages.

Based upon these findings of fact, the trial court concluded that: (1) plaintiff's unemployment was voluntary; (2) plaintiff had disregarded her obligation to support her three children with defendant; (3) plaintiff's actions were intentional and willful avoidance and deliberate disregard of her support obligation to her children with defendant. The only conclusion referenced above that is supported by competent evidence is that plaintiff's unemployment was voluntary. There was no evidence in the record to support the conclusion that plaintiff willfully and intentionally avoided or deliberately disregarded her support obligation. Plaintiff simply adopted the same parenting arrangement with her new spouse that she had with defendant. *See Pataky v. Pataky*, 160 N.C. App. 289, 307, 585 S.E.2d 404, 416 (2003) (" '[t]he dispositive issue is whether a party is motivated by a desire to avoid his reasonable support obligations.' ") (quoting *Wolf v. Wolf*, 151 N.C. App. 523, 527, 566 S.E.2d 516, 519 (2002)). Significantly, this parenting arrangement is substantially the same as the arrangement defendant has with his current spouse who works part-time and earns only $333.00 per month.

Further, nowhere in the trial court's findings of fact or conclusions of law is there any suggestion that plaintiff's unemployment was a result of a "bad faith or deliberate suppression of income to

avoid or minimize [] her child support obligation" as required for the imputation of income under the North Carolina Child Support Guidelines. Consequently, I would hold that the imputation of income to plaintiff was erroneous as it is not supported by the evidence.

Accordingly, I would hold that the trial court failed to make findings sufficient to allow adequate review of the decision to deviate from the statutory child support guidelines. I would remand this action to the trial court for further findings of fact regarding the reasonable needs of the children and plaintiff's estate and reverse the trial court's decision to impute income to plaintiff.