IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA25-590

Filed 17 December 2025

Forsyth County, No. 23CVD002992-330

JOE-PHILIP O. NZEWUNWAH, Plaintiff,

v.

RODALYN GONZALEZ NZEWUNWAH, Defendant.

Appeal by plaintiff from order entered 11 March 2025 by Judge George M. Cleland IV in Forsyth County District Court. Heard in the Court of Appeals 19 November 2025.

*Harvey W. Barbee, Jr., for plaintiff-appellant.*

*Jackson Family Law, by Jill Schnabel Jackson, for defendant-appellee.*

FLOOD, Judge.

Plaintiff-Father Joe-Philip O. Nzewunwah appeals from the trial court's order requiring Father to pay child support. On appeal, Father argues the trial court erred: first, in calculating his income; second, by including certain work-related child care expenses in the calculation of his child support obligation; and third, by reducing his child support arrears to a judgment and placing a lien on any real property owned by him, when the trial court failed to comply with N.C.G.S. § 50-13.4(f)(8). Upon careful review, we conclude the trial court erred in calculating Father's income, by including certain work-related child care expenses that were not supported by competent

evidence in the child support calculation, and by failing to adequately describe the real property affected as required by N.C.G.S. §50-13.4(f)(8).

## I. Factual and Procedural Background

Father and Defendant-Mother Rodalyn Nzewunwah were married in 2017, separated in 2022, and subsequently divorced. Father and Mother are the biological parents of one minor child, Luke,[1] born in 2020. Following their separation, on 16 June 2023, Father filed an action against Mother seeking, *inter alia*, child custody and child support. On 1 September 2023, Mother filed an answer and counterclaims seeking, *inter alia*, child custody and both retroactive and prospective child support.

Prior to the parties' separation, and until August 2023, Father worked for a Nigerian-based company that was an affiliate of ExxonMobil ("Exxon-Nigeria"), which required Father to primarily reside in Nigeria. In August 2023, Father quit his job; became "self-employed"; moved to Atlanta, Georgia; and rented an apartment for approximately $2,183.19 per month. Mother worked as a full-time physician's assistant in emergency medicine; after the separation, she hired "in-home nanny care[,]" given her emergency department work schedule. Mother also applied for Luke to attend Montessori School, which Luke was supposed to begin on 1 August 2024.

On 12 April 2024, the trial court entered a child custody order, granting Mother sole legal and physical custody of Luke. Father was awarded visitation with Luke;

---

[1] A pseudonym is used to protect the identity of the juvenile. *See* N.C.R. App. P. 42(b).

however, none of Father's visitations were allowed to take place outside of the United States. The trial court subsequently held a hearing on child support on 25 June 2024, and entered an order on 11 March 2025, requiring Father to pay child support in the amount of "$3,902.00 per month[.]" Further, the trial court reduced Father's child support arrears—which was an amount of $84,790—to a judgment, and placed a lien on any real property owned by him.

In computing the child support amount, the trial court found, regarding Father's income, that: Father had acted in "bad faith," such that quitting his job "reflect[ed] a deliberate disregard of his financial responsibility to support his child"; Father "alleged he had no earned income"; "[Father's] testimony was not credible"; and Father's income to be "$15,935.00 per month based upon his prior actual income and his current income-earning abilities." Additionally, regarding Mother's expenses, the trial court found the live-in nanny care of $2,800 per month to be a necessary work-related expense, given Mother's emergency department schedule, and found the Montessori school to be a work-related child care expense, thus increasing "work-related child[]care expenses to $3,626.80 per month."

Father timely appealed.

## II. **Jurisdiction**

This Court has jurisdiction to review this appeal from a final judgment of child support from a district court, pursuant to N.C.G.S. §§ 7A-27(b) and 50-19.1 (2023).

## III. **Standard of Review**

"Child support orders entered by a trial court are accorded substantial deference by appellate courts and our review is limited to a determination of whether there was a clear abuse of discretion." *Jonna v. Yaramada*, 273 N.C. App. 93, 100 (2020) (citation omitted). "Under this standard of review, the trial court's ruling will be upset only upon a showing that it was so arbitrary that it could not have been the result of a reasoned decision." *Biggs v. Greer*, 136 N.C. App. 294, 296–97 (2000) (citation and internal quotation marks omitted). "The trial court must, however, make sufficient findings of fact and conclusions of law to allow the reviewing court to determine whether a judgment, and the legal conclusions that underlie it, represent a correct application of the law." *Spicer v. Spicer*, 168 N.C. App. 283, 287 (2005). "This Court's review of a trial court's child support order is limited to whether there is competent evidence to support the findings of fact, despite the fact that different inferences may be drawn from the evidence." *Hodges v. Hodges*, 147 N.C. App. 478, 482–83 (2001). "If unchallenged on appeal, findings of fact are deemed supported by competent evidence and are binding upon this Court." *In re M.J.S.M.*, 257 N.C. App. 633, 636 (2018) (citation omitted).

"Where a party asserts an error of law occurred, we apply a de novo standard of review." *Jonna*, 273 N.C. App. at 100 (citation omitted). "Under a de novo review, the court considers the matter anew and freely substitutes its own judgment for that of the lower tribunal." *In re S.W.*, 298 N.C. App. 39, 44 (2025) (citation omitted).

Additionally, this Court reviews de novo questions of statutory interpretation. *See State v. Williams*, 297 N.C. App. 512, 522 (2024).

## IV. <u>Analysis</u>

On appeal, Father argues the trial court erred (A) in calculating his income; (B) by including certain work-related child care expenses in the child support calculation; and (C) by reducing Father's child support arrears to a judgment and placing a lien on any real property owned by Father, when the trial court failed to comply with N.C.G.S. § 50-13.4(f)(8). We address each argument, in turn.

## A. Father's Income

Father first argues the trial court erred in calculating his income. Specifically, Father argues the trial court erred by (1) imputing income to Father where the evidence did not support a finding that he acted in bad faith, and (2) converting Father's Nigerian salary into American dollars by utilizing the exchange rate on the date of separation for the entire child support amount, rather than using two different exchange rates for retroactive and prospective child support. We disagree.

### 1. Bad Faith

Although "[i]t is well established that child support obligations are ordinarily determined by a party's actual income at the time the order is made or modified[,]" a party's "capacity to earn income may become the basis of an award if it is found that the party deliberately depressed his income or otherwise acted in deliberate disregard of the obligation to provide reasonable support for his child." *Ellis v. Ellis*, 126 N.C.

App. 362, 363 (1997) (citation modified). The North Carolina Child Support

Guidelines provide, in relevant part:

> **(3) Potential or Imputed Income**. If the court finds that
> a parent's voluntary unemployment or underemployment
> is the result of the parent's *bad faith or deliberate
> suppression* of income to avoid or minimize his or her child
> support obligation, child support may be calculated based
> on the parent's potential, rather than actual, income . . . .
> In determining whether a parent's voluntary
> unemployment or underemployment is the result of the
> parent's bad faith or deliberate suppression of income, the
> court shall consider the specific circumstances of the
> parent . . . .
>
> The amount of potential income imputed to a parent must
> be based on the parent's assets, residence, employment
> potential and probable earnings level, based on the
> parent's recent work history, occupational qualifications
> and prevailing job opportunities and earning levels in the
> community and other relevant background factors relating
> to the parent's actual earning potential.

N.C. Child Support Guidelines, at 3 (2023) (emphasis added); *see also Wachacha v.

Wachacha*, 38 N.C. App. 504, 507 (1978) ("When a court concludes as a matter of law

on the basis of the evidence presented that a husband has failed to exercise his

reasonable capacity to earn because of a disregard of his marital and parental

obligations to provide reasonable support for his wife and minor child, the court may

base an alimony and/or child support award on the individual's ability to earn as

distinguished from his actual income.").

"The primary issue is whether a party is motivated by a desire to avoid his

reasonable support obligations." *Mason v. Erwin*, 157 N.C. App. 284, 289 (2003)

(citation and internal quotation marks omitted). The trial court can impute income if the evidence presented shows that a party has disregarded his or her parental obligations by:

> (1) failing to exercise his reasonable capacity to earn, (2) deliberately avoiding his family's financial responsibilities, (3) acting in deliberate disregard for his support obligations, (4) refusing to seek or to accept gainful employment, (5) willfully refusing to secure or take a job, (6) deliberately not applying himself to his business, (7) intentionally depressing his income to an artificial low, *or* (8) intentionally leaving his employment to go into another business.

*Id.* at 289 (citation omitted) (emphasis added).

In making these determinations, "[t]he trial court is the sole judge of credibility and is free to weigh the testimony in its discretion." *Icenhour v. Icenhour*, 298 N.C. App. 502, 513 (2025) (citing *State v. Johnson*, 378 N.C. 236, 242 (2021)). "[A] determination of bad faith in conjunction with suppression of income is best made on a case-by-case basis[,]" and intent "must ordinarily be proven . . . by circumstantial evidence, that is, by proving facts from which the fact sought to be proven may be inferred." *Roberts v. McAllister*, 174 N.C. App. 369, 378–79 (2005) (citations omitted).

Here, the trial court made the following, relevant findings of facts:

> 22. [Father] voluntarily left his position with Exxon-Nigeria several months after the parties' date of separation to become self-employed.
>
> 23. [Father] voluntarily chose to move to Atlanta, Georgia, and to rent an apartment with a rental payment of approximately $2,183.19 per month.

24. That after [Father] voluntarily left his Position with Mobile Producing Nigeria, he engaged in international travel for pleasure.

. . . .

35. That [Father] voluntarily and in bad faith left his position with Mobile Producing Nigeria in avoidance of and with a naive indifference to his obligation to support the parties' minor child.

36. That [Father] went at least 18 months wherein he paid no support for the parties' minor child.

At the child support hearing, Father testified that he was "looking for employment" and had been "looking for employment almost a year now[,]" but was unsuccessful. Father explained he left his job for a "few reasons[,]" stating that management had changed, and he would have "to be in the office all the time" in Nigeria, such that

it was impossible for me to be in America and be in Nigeria at the same time. I was supposed to be stationed in Nigeria for a long time. I couldn't see myself being able to resolve matters with my ex-wife and be able to have a relationship with my son if I was going to continue to stay in that role in Nigeria.

Father, however, admitted that even when he was still fully employed with Exxon-Nigeria, he failed to pay child support from January 2023 through July 2023. The trial court found that "[Father's] testimony was not credible[,]" and stated at the hearing:

So, just conveniently, the nine months that we have been

waiting to talk about child support, you with an Ivy League MBA, I mean, if you were sitting here, and I was telling you, you need to pay three grand a month or whatever, and you haven't paid it, then I'm going to put you in that holding cell and send you through the tunnel to the jail, you would not eat dinner in the jail tonight, you would be out of that jail before supper time if I said I need three grand right now. I know it . . . and I just know it.

. . . .

You are the most -- you may be the most employable person in the building as we speak right now, and you conveniently will not work.

The trial court, being the "sole judge of credibility," *see Icenhour*, 298 N.C. App. at 513, found Father's testimony uncredible. Although Father claimed he was not "motivated by a desire to avoid his reasonable support obligations[,]" *see Mason*, 157 N.C. App. at 289, the trial court inferred bad faith from other "circumstantial evidence," *see Roberts*, 174 N.C. App. at 379, including evidence that Father had not paid child support for six months leading up the time he quit his job, and had even "engaged in international travel for pleasure" after leaving his job. Therefore, we conclude the trial court did not abuse its discretion in determining Father acted in bad faith; thus, we affirm the trial court's imputation of Father's capacity to earn. *See Jonna*, 273 N.C. App. at 100.

### 2. Converting Salary

Father argues the trial court erred by converting his salary at the exchange rate of the day of separation for the entire amount of child support. Specifically,

Father contends that, while the retroactive portion of the child support order was correctly calculated from the exchange rate as of 30 March 2022—the date of separation—the prospective child support portion should have been calculated by converting his salary to the exchange rate as of the date of the child support hearing. We agree.

"In the absence of an existing child support order, an amount of child support awarded prior to the date a party files a complaint therefor[e] is properly classified as retroactive child support[.]" *Biggs*, 136 N.C. App. at 300 (citation modified); *see also Respess v. Respess*, 232 N.C. App. 611, 628 (2014) ("Child support awarded prior to the time a party files a complaint is properly classified as retroactive child support . . ." (citation omitted)).

Prospective child support, however, "generally includes the period between the filing of the complaint for child support and the hearing date." *Cole v. Cole*, 149 N.C. App. 427, 433 (2002); *see also State ex rel. Miller v. Hinton*, 147 N.C. App. 700, 706 (2001) ("[T]he implied presumption that child support payments should begin at the time the complaint was filed.").

As mentioned above, "child support obligations are ordinarily determined by a party's actual income at the time the order is made or modified[.]" *Ellis*, 126 N.C. App. at 362. The North Carolina Child Support Guidelines provide that for retroactive child support, a trial court "may determine the amount of parent's obligation [] by determining the amount of support that would have been required

- 10 -

had the guidelines been applied at the beginning of the time period for which support is being sought . . . ." N.C. Child Support Guidelines, at 2.

Here, the retroactive portion of the child support would be from the date of separation—30 March 2022—until the date of the first filed claim for child support—16 June 2023, with the income determined on 30 March 2022. *See Biggs*, 136 N.C. App. at 300. The prospective portion of the child support would then be from 16 June 2023 onward, *see Cole*, 149 N.C. App. at 433, and should have been calculated by determining Father's income on the date of the hearing—25 June 2024, *see Ellis*, 126 N.C. App. at 362. In determining Father's income for the retroactive period, the trial court used the published exchange rate for Naira–to–U.S. dollars on 30 March 2022, which was 0.002406 and resulted in converting Father's salary from 79,478,690.57 Naira to $191,225.70 U.S. dollars. The trial court did not conduct another income determination for prospective child support, and instead, used the same exchange rate of 30 March 2022 for the prospective child support portion, which should have been calculated based on the income, including the exchange rate, for 25 June 2024.

Because the trial court used only one income determination date for both retroactive child support and prospective child support, the trial court did not properly apply the Guidelines. *See Biggs*, 136 N.C. App. at 300; *see Ellis*, 126 N.C. App. at 362. Accordingly, we remand to the trial court for proceedings consistent with this opinion.

### B. Work-Related Child care Expenses

Father next argues the trial court erred by including certain work-related child care expenses in the calculation of his child support obligation. Specifically, Father contends the trial court erred by including: (1) work-related child care expenses in the amount of $2,800.00 per month for live-in nanny care, where Finding of Fact 12 was not sufficiently supported by evidence at trial; and (2) the Montessori school expense by incorrectly classifying it as a work-related child care cost that was not supported by evidence. We disagree with Father's argument regarding the live-in nanny care expenses, but we agree the inclusion of the cost of the Montessori school was not supported by evidence.

### 1. Live-In Nanny Care

Father first argues "[t]he evidence in this case falls short of establishing that $2,800.00 per month spent on a live-in nanny is either reasonable or that this amount was a necessary expense that was incurred by [Mother] as a result of her employment."

The Guidelines provide that "[r]easonable child care costs that are, or will be, paid by a parent due to employment or job search are added to the basic child support obligation . . . . Other reasonable child care costs . . . may be the basis for a deviation." N.C. Child Support Guidelines, at 4.

Here, the trial court's Finding of Fact 12 states: "At the time of separation and through the date of this hearing, [Mother] paid $2,800 per month, on average, for in-home nanny care which is necessary given [] Mother's Emergency Department work

schedule." Mother testified that the nanny care she used consisted of women from the Dominican Republic, where Mother's family resides, and she included flight costs for the nannies in her calculation of her monthly average on nanny care. At trial, the following, relevant conversation took place regarding nanny care costs:

> Q: In your opinion, has it ever been feasible for you to use an 8 a.m. to 6 p.m. daycare?
>
> A: No.
>
> Q: Are you aware of any daycares that would work with working a shift that gets off at 2 a.m. in the morning?
>
> A: No.
>
> . . . .
>
> Q: And approximately how much cash did you pay to each of the nannies you have had since the date of separation?
>
> A: A thousand six hundred dollars ($1,600.00) a month.
>
> Q: In addition to the $1,600.00 a month, what do you provide for them in-home?
>
> A: I provide them with a, you know, full-time home, food, [and] their toiletries. I try to cover their basic necessities around the house. And then, you know, when we go out, we kind of go out as a family of three. They help me out, obviously, but also just, you know, partake in our activities, like going to the children's museum, or the zoo, or the aquarium, [or] the science center. They don't necessarily participate in every single trip, but when they do, I cover that cost, obviously.
>
> Q: Do they contribute to the utilities in your home for the utilities they use?

A: No.

Q: Do they pay for their own medications, their over-the-counter medications?

A: No; I cover their Omeprazole and their ibuprofen, and their Tylenol.

. . . .

Q: How much do you pay on average each month for cash, groceries, toiletries, utilities, room and board, transportation, food, toiletries, dining out, gasoline, and outings?

A: At least $2,800.00 is what I have estimated.

. . . .

Q: When coming up with this calculation, have you used an average of those flights?

A: Yeah; more or less. An average of like $400.00, sometimes it -- you know, if it lands during holidays or Mother's Day, summertime, that's particularly popular to travel to and from the Dominican Republic, it's been more.

. . . .

Father argues that "[w]hile [Mother] may certainly be entitled to some credit for a work-related child[]care cost, she is not entitled to simply include and be credited for the entire cost of having a nanny live with her 24 hours a day, 7 days a week[.]" The trial court, however, is afforded substantial deference in determining child support matters, *see Jonna*, 273 N.C. App. at 100, and there is competent evidence from Mother's testimony that Mother requires a live-in nanny as compared to a

regular daycare center due to her Emergency Department work schedule, *see Hodges*, 147 N.C. App. at 482–83.

Additionally, Father argues "the trial court erred by failing to separate or apportion the cost of those child[]care expenses which were actually necessary and reasonably related to [Mother's] employment from those which were superfluous, excessive and not tied to actual work-related child[]care[,]" such as paying for the medication for the nannies, as well as for nannies to accompany Mother and Luke to the zoo or other activities. Father abandoned this portion of his argument, however, because he has not provided any legal authority to support his contention that these expenses are unreasonable. *See K2HN Constr. NC, LLC v. Five D Contractors, Inc.*, 267 N.C. App. 207, 213 (2019) ("This Court has routinely held an argument to be abandoned where an appellant presents argument without . . . authority[.]"); *see also* N.C.R. App. P. 28(b)(6) (providing that "[i]ssues not presented in a party's brief, or in support of which no reason or argument is stated, will be taken as abandoned"). Even if Father had not abandoned his argument, we do not discern any abuse by the trial court in finding these expenses were reasonably related to providing adequate child care. *See Jonna*, 273 N.C. App. at 100.

### 2. Montessori School

Father next contends the trial court erred by including the cost of the minor child's attendance at the Montessori school as a work-related child care expense, and that this finding of fact was not supported by evidence. We agree.

At the hearing, Mother admitted that, although she had applied for Luke to attend the Montessori preschool, he had "not been accepted." She testified that the people at the school were "pretty confident that we'll be able to get in." The trial court found that "[b]eginning August 1, 2024, the minor child will begin attending Montessori School which, in addition to his in-home child[]care, will increase work-related child[]care expenses to $3,626.80 per month." There is no competent evidence in the Record that Luke was set to begin attending the school on 1 August 2024; there was only competent evidence that Mother had applied and was hopeful Luke would get in. Accordingly, we vacate the child support order and remand to the trial court for further findings of fact as to the Montessori school inclusion. *See Hodges*, 147 N.C. App. at 482–83.

**C. Child Support Arrears to a Judgment**

Father lastly argues the trial court erred by reducing his child support arrears to a judgment and placing a lien on any real property owned by him when the trial court failed to comply with N.C.G.S. §50-13.4(f)(8). Specifically, Father contends the trial court "was without authority to reduce [Father's] support arrears to a judgment[,]" and even if it had the authority, its order "fail[ed] to provide for any periodic payments to be made towards the arrearages." We disagree, but remand for an adequate description of any real property on which the judgment will be a lien.

"[O]ur Supreme Court has held that statutory interpretation properly begins with an examination of the plain words of the statute." *State v. Campbell*, 285 N.C.

App. 480, 487 (2022) (citation modified). "If the statutory language is clear and unambiguous, the court eschews statutory construction in favor of giving the words their plain and definite meaning." *JVC Enters., LLC v. City of Concord*, 376 N.C. 782, 785 (2021) (citation omitted).

Under N.C.G.S. § 50-13.4(f), "[r]emedies for enforcement of support of minor children shall be available as follows[,]" including, in relevant part:

> Except as provided in Article 15 of Chapter 44 of the General Statutes, a judgment for child support shall not be a lien against real property unless the judgment expressly so provides, sets out the amount of the lien in a sum certain, and adequately describes the real property affected; but past due periodic payments may by motion in the cause or by a separate action be reduced to judgment which shall be a lien as other judgments and may include provisions for periodic payments.

N.C.G.S. § 50-13.4(f)(8) (2023). The statute further provides that "[t]he specific enumeration of remedies in this section shall not constitute a bar to remedies otherwise available." N.C.G.S. § 50-13.4(f)(11).

Here, Mother, in her counterclaims, asked the trial court to "enter a retroactive order for child support, establish arrears, and enter a prospective order for child support pursuant to the North Carolina Child Support Guidelines[,]" and for the arrears, the trial court should "require the immediate payment" from Father.

The trial court's Finding of Fact 29 provides:

> That the child support arrears of $84,790 should be reduced to JUDGMENT and said JUDGMENT should be DOCKETED RECORDED AND INDEXED in the

- 17 -

> Judgment Docket in Forsyth County, North Carolina, and in any other jurisdiction where [Father] resides, is employed or owns the property with interest running on the same at the legal rate.

The trial court then concluded as a matter of law "[t]hat reduction of arrears to judgment with interest accruing at the legal rate is proper."

Father argues there had been no "past due periodic payments" that could have been reduced to a judgment under N.C.G.S. § 50-13.4(f)(8), and there were no motions in the cause filed nor separate actions to establish a judgment for past due periodic support payments. Although we agree with Father's argument as it would apply to the latter half of N.C.G.S. § 50-13.4(f)(8), we are not dealing with "past due periodic payments." This is an initial child support order which may be reduced to judgment, and, as the first part of N.C.G.S. § 50-13.4(f)(8) plainly provides, a judgment will be a lien against real property if the "judgment expressly so provides, sets out the amount of the lien in a sum certain, and adequately describes the real property affected[.]" *See* N.C.G.S. § 50-13.4(f)(8); *see also Dula v. Parsons*, 243 N.C. 32, 35 (1955) ("A docketed judgment, directing the payment of money, is a lien on the real property situated in the county in which the judgment is docketed and owned by the judgment debtor at the time the judgment is docketed . . . .").

Here, the trial court expressly provided the judgment was for the sum certain of $84,790, and that it be docketed in any county in which Father is employed or owns property, but failed to describe the real property on which there would be a lien.

Accordingly, we vacate and remand to the trial court for further findings of fact to adequately describe the real property affected.

## V. <u>Conclusion</u>

Upon careful review, we conclude the trial court properly imputed income to Father but erred by failing to calculate his prospective child support obligation as of the date of the hearing. The trial court also erred by including the cost of the Montessori school as a work-related child care expense without hearing evidence and making sufficient findings of fact to support the inclusion of that expense, and by failing to adequately describe the real property to be affected by the judgment lien, as required by N.C.G.S. §50-13.4(f)(8). Accordingly, we affirm in part, vacate in part, and remand for additional findings of fact. In its discretion, the trial court may hear additional evidence.

AFFIRMED IN PART AND VACATED AND REMANDED IN PART.

Judges ZACHARY and STADING concur.