**GEIGER, Appellee and Cross–Appellant,**

v.

**GEIGER, Appellant and Cross–Appellee.**

[Cite as *Geiger v. Geiger* (1994), 96 Ohio App.3d 630.]

Court of Appeals of Ohio,
Franklin County.

No. 93APF09–1333.

Decided Sept. 1, 1994.

*Carol L. Smith,* for appellee and cross-appellant.

*Kemp, Schaeffer & Rowe Co., L.P.A., Harold R. Kemp* and *Suzanne Martello,* for appellant and cross-appellee.

WHITESIDE, Presiding Judge.

Defendant-appellant, Steven M. Geiger, appeals from a judgment of the Franklin County Court of Common Pleas, Division of Domestic Relations, and raises the following two assignments of error:

1. "The trial court erred in determining that funds derived from the liquidation of marital assets (personal property) already awarded to appellant pursuant to a divorce decree be deemed his 'income' for purposes of calculating child support."

2. "The trial court erred in determining that the effective date of defendant's Civil Rule 60(B) relief should be June 1, 1991 as opposed to February 1, 1990."

Plaintiff filed a cross-appeal and raised the following issues, designated as "Propositions of Law"[1]:

1. "The trial court was correct in including income from all sources in its calculation of appellant's income for child support purposes, including income from the sale of appellant's personal and business property."

2. "The trial court erred in granting appellant's Civil Rule 60(B) motion."

The parties were married and had one child but divorced in 1988. On March 27, 1991, defendant filed a motion requesting a modification of child support and alimony, relief from judgment pursuant to Civ.R. 60(B), and an award of attorney fees and expenses. Plaintiff filed a motion requesting a show-cause order for

---

1. The first issue raised by plaintiff is merely a response to defendant's first assignment of error. Plaintiff's second proposition of law seeks affirmative relief and shall be deemed her assignment of error.

contempt for failure to pay child support and alimony in addition to other specific debts. Plaintiff also requested a modification of child support and an award of attorney fees and expenses.

The matter was referred to a referee. After several days of hearings, the referee recommended that the trial court (1) grant defendant's Civ.R. 60(B) motion effective June 1991, (2) order defendant to pay the arrearage of child support and alimony, (3) dismiss plaintiff's motion to modify alimony, (4) overrule plaintiff's motions for contempt and payment of other debts, and (5) overrule both parties' motions for attorney fees. Even though an original copy had been filed, the trial court found that neither party had complied with Loc.R. 9 [2] and overruled and dismissed all objections related to factual findings and adopted the referee's report finding the referee correctly calculated child support and correctly recommended modifications based upon a change in circumstances.

By the first assignment of error, defendant contends that the trial court erred in determining that funds derived from the liquidation of marital assets already awarded to defendant pursuant to a divorce decree be deemed his income for purposes of calculating child support. In the agreed judgment entry of divorce, defendant was awarded all of the parties' businesses, which included The Olde Towne Inn, G & M Machine Products, Inc. ("G & M"),[3] Geiger Investments, and G & M Development Company, in addition to real estate relating to the businesses. Defendant was required to pay plaintiff $50,000 as nonmodifiable sustenance alimony, payable at the rate of $1,000 per month. The referee stated that:

"[T]he evidence clearly demonstrates that the payment to the Plaintiff of the $50,000.00 in nonmodifiable 'sustenance alimony' was in exchange for Defendant receiving the parties' business entities. The evidence is also clear that G & M was the primary source of income for the other businesses as well as the parties'

---

2. Loc.R. 9 of the Franklin County Court of Common Pleas, Division of Domestic Relations, provides in pertinent part as follows:

"All original transcripts shall be filed by the Official Court Reporter with the Clerk of Courts and shall thereby become part of the official record of the case. A copy will be provided to the ordering party, upon request, at one-half the cost of the original.

" * * *

"Failure to file a transcript when one is required by this Rule is a basis for dismissal of the objection."

Although the filing of a copy of the transcript containing a certificate signed by the court reporter is sufficient to comply with the requirement of Civ.R. 53(E)(6) (and thus Loc.R. 9), even if such certified copy of the transcript is marked "copy," no assignment of error is raised by either party.

3. G & M produced aluminum and other metal parts for businesses which used the parts in manufacturing.

support during the marriage and Defendant's ability to pay his support and other obligations under the decree. * * * "

Plaintiff had worked at G & M during the marriage. Following the divorce, she worked in the other businesses and again at G & M. She stopped working for G & M in December 1989 or January 1990. In February 1990, plaintiff opened a new business, Thermal Fab, which produces parts "virtually identical to those produced by G & M." Former employees of G & M were employed by Thermal Fab, and its sole customer was Art Lansky, who had previously been defendant's customer at G & M. Defendant had to close G & M as a result of losing the Lansky business.

The defendant contends that the referee did not properly determine his income for child-support purposes. Defendant contests the calculation arguing that the referee included items as income which should not have been included in such a determination. Defendant contends that the referee improperly included money received from the sale of personal assets as income.

Income for child-support purposes is defined in R.C. 3113.215(A)(1) as: " * * * either of the following:

"(a) For a parent who is employed to full capacity, the gross income of the parent;

"(b) For a parent who is unemployed or underemployed, the sum of the gross income of the parent, and any potential income of the parent."

"Gross income" is defined in R.C. 3113.215(A)(2) as:

" * * * except as excluded in this division, *the total of all earned and unearned income* from all sources during a calendar year, whether or not the income is taxable, and includes, but is not limited to income from salaries, wages [etc.] * * * and all other sources of income * * *." (Emphasis added.)

The definition of "gross income" depends upon "income." The sale of assets was merely a conversion of assets into cash, not income realized by the defendant. When a person sells assets other than in the ordinary course of business, the income includes only the profit received on the item, not the initial investment which may be recouped upon the sale. Therefore, the referee should have at most included only any profit defendant received when he sold the assets,[4] not the entire amount he received upon the sale.

---

4. The dissent outlines one of several appropriate methods that may be utilized to determine "profit." However, the proper method depends upon the facts of a given case. There are no findings of fact of the referee adopting or utilizing the dissent's analysis, and the underlying evidence is not before us because the transcript was stricken by the trial court. The only "findings" in the referee's report are that "Defendant has also sold substantial business and

However, the referee included the total amount received from the sale, stating in the report:

*"Defendant has also sold substantial business and personal assets totaling more than $42,000.00 to pay his debts and expenses. A substantial portion of his income was derived from these sales.* In the last quarter of 1991, he deposited $6,826.00 from the proceeds of these sales.

" * * *

"For purposes of the guideline calculations, Plaintiff has income of $5,701.00 in 1991 and her anticipated income for 1992 is $8,000.00. In the first six months of 1991, Defendant had a draw averaging $925.00 per week or $24,050.00 for the six month period from G & M. His offsetting business expenses for that time period were not presented with any specificity nor are they identifiable on his 1991 tax return (Exhibit 4). In that year, Geiger Excavating showed a net loss. *In 1991, Defendant also had income from the sale of his assets of approximately $42,000.00, identifiable unemployment benefits of $2,352.00 and $515.00 per month in interest payments. Accordingly, his 1991 income from all sources is $74,582.00.* * * * " (Emphasis added.)

The referee included the total amount received from the sale of assets, not merely any income received as profit. The trial court, in its decision adopting this conclusion, states that "[d]efendant used the sale proceeds as if it were income to satisfy his debts and expenses." This is not the test to determine "income" for purposes of child-support calculations. Converting a tangible or intangible asset into cash is not income except to the extent, if any, that there is a profit or gain. Consequently, the referee did not properly determine defendant's income for child-support purposes, and defendant's first assignment of error is well taken.

By the second assignment of error, defendant contends that the trial court erred in determining that the effective date of defendant's Civ.R. 60(B) relief should be June 1, 1991, as opposed to February 1, 1990. Defendant filed his Civ.R. 60(B)(4) and (5) motion based upon the fact that his business was forced to cease operations. Civ.R. 60(B) provides in pertinent part:

"On motion and upon such terms as are just, the court may relieve a party or his legal representative from a final judgment, order or proceeding for the following reasons: * * * (4) the judgment has been satisfied, released or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have

---

personal assets totalling more than $42,000.00 to pay his debts and expenses," and that "Defendant also had income from the sale of his assets of approximately $42,000.00."

prospective application; or (5) any other reason justifying relief from the judgment. The motion shall be made within a reasonable time * * *."

In *Griffey v. Rajan* (1987), 33 Ohio St.3d 75, 77, 514 N.E.2d 1122, 1123–1124, the Supreme Court of Ohio stated that the decision whether to grant relief from judgment is addressed "to the sound discretion of the trial court, and that court's ruling will not be disturbed on appeal absent a showing of abuse of discretion." In the second paragraph of the syllabus of *GTE Automatic Elec., Inc. v. ARC Industries* (1976), 47 Ohio St.2d 146, 1 O.O.3d 86, 351 N.E.2d 113, that court set forth the following test:

"To prevail on a motion brought under Civ.R. 60(B), the movant must demonstrate that: (1) the party has a meritorious defense or claim to present if relief is granted; (2) the party is entitled to relief under one of the grounds stated in Civ.R. 60(B)(1) through (5); and (3) the motion is made within a reasonable time, and, where the grounds of relief are Civ.R. 60(B)(1), (2) or (3), not more than one year after the judgment, order or proceeding was entered or taken."

The moving party must establish the three requirements separately. *Id.* at 151, 1 O.O.3d at 88, 351 N.E.2d at 116.

The referee found that defendant was entitled to Civ.R. 60(B) relief. It is no longer equitable for the judgment to have prospective application since G & M no longer exists, and G & M was the "primary source of income for the other businesses as well as the parties' support during the marriage and Defendant's ability to pay his support and other obligations under the decree." Additionally, the defendant has a meritorious defense or claim to present in that "the payment of the alimony award was essentially in exchange for G & M and the other businesses." The referee determined that, had G & M not had Lansky as a customer at the time of the divorce, G & M would not have had as great a value, and the property division would have reflected the difference. The referee found that the third requirement was also met since, under the circumstances, the defendant filed the Civ.R. 60(B) motion within a reasonable time.

Defendant contends that the trial court erred in determining that the effective date of the relief should be June 1, 1991, as opposed to February 1, 1990. June 1, 1991 was the date that G & M ceased its operations. Defendant argues that, since plaintiff opened Thermal Fab on February 1, 1990, and by that date "had performed all acts leading to the conversion of his business," the date should be February 1, 1990. Additionally, defendant contends that time was necessary to wind up the business affairs and "since the damage had been done and all acts committed on or before February 1, 1990, his obligation should not have extended past that date." Defendant has not shown that this finding was erroneous or an abuse of discretion. G & M was operating until June 1, 1991, and G & M was

granted to defendant in exchange for the alimony payments. Therefore, the referee determined that the alimony payments should end when G & M ceased operations, not when the plaintiff opened her business. Even if we were to review the transcript of proceedings, there is competent, credible evidence supporting this determination. Defendant has not shown that a different date is required to be found as the appropriate date. The determination is not against the manifest weight of the evidence, erroneous as a matter of law, or shown to be an abuse of discretion. Plaintiff's opening her business did not necessarily terminate G & M, especially since it did not cease business until sixteen months later. Even assuming the trial court could have found February 1, 1990, to be the appropriate date, it was not required to do so. Consequently, defendant's second assignment of error is not well taken.

■ Plaintiff filed a notice of cross-appeal. However, she did not file a separate brief in this court as an "appellant." Rather, she filed her appellee brief and raised her contention of error in the appellee brief. To request affirmative relief, plaintiff was required to file a brief as appellant within twenty days after the date on which the clerk mailed the notice that the record was filed, unless extended by the court. See App.R. 16 and 18. App.R. 18(C) provides that "[i]f an appellant fails to file his brief within the time provided by this rule, or within the time as extended, the court may dismiss the appeal." Even though plaintiff's assignment of error was raised only in her appellee's brief, we will briefly address it.

By her assignment of error, plaintiff requests affirmative relief in that she raised the following issue: "The trial court erred in granting appellant's Civil Rule 60(B) motion." For this assignment of error, a transcript is necessary as the issues involved are factual and evidentiary in nature. The trial court determined that neither party had complied with Loc.R. 9, finding that "[c]opies of the original transcript do not constitute the official record." The trial court dismissed all objections to the referee's report and adopted it since the volumes of the transcript which were filed were stamped "Copy." All but one partial transcript contained an original signature of the court reporter certifying that the transcript was a "true, correct, and complete transcript of the proceedings." Since the transcripts were authenticated by certification, the fact that they were stamped "Copy" would not detract from their being considered as an appropriate record of the evidence adduced.[5]

■ Additionally, plaintiff filed a motion to strike "portions of the record which were filed by appellant in contravention to the Appellate Rules and which were

---

5. See fn. 2.

improperly accepted for filing by the clerk of the court of common pleas." Even if it were meritorious, such motion should have been filed in the trial court, not this court, since the transcripts were filed in the trial court and are a part of the record on appeal as original papers filed in the trial court. As such, the motion is both untimely and not well taken and is overruled.

■ Further, without the transcripts, there is nothing in the record to support plaintiff's assignment of error. Since no issue has been raised as to the trial court's failure to consider the transcript, we confine our consideration to the finding of facts.[6] On the basis of the referee's report, as adopted by the trial court, plaintiff's assignment of error is not well taken since, as stated above, there is a proper basis for granting relief from judgment.

For the foregoing reasons, defendant's first assignment of error is sustained, and his second assignment of error is overruled; plaintiff's cross-assignment of error is overruled; the judgment of the Franklin County Court of Common Pleas, Division of Domestic Relations is reversed; and this cause is remanded to that court for further proceedings in accordance with law and consistent with this opinion.

*Judgment reversed*
*and cause remanded.*

PEGGY BRYANT, J., concurs.

TYACK, J., concurs in part and dissents in part.

TYACK, Judge, concurring in part and dissenting in part.

Since I strongly disagree with the majority's analysis and result in regard to the first assignment of error, I respectfully dissent.

The sale of personal property can generate income or not generate income, depending on the circumstances. The test for determining whether or not income is realized is not dependent upon "profit" or "gain." Income is realized when an item is sold for a price which exceeds its depreciated basis. An individual may sell an item of personal property for precisely the same price as the item's purchase price and still realize income because prior depreciation is generally recaptured at the time of sale.

The "profit" or "gain" criterion used in the majority opinion allows people who are more concerned about the size of their bank book than the welfare of their children to avoid paying the full amount contemplated by the child-support guidelines. The payor has merely to allocate personal property or even real

---

6. See fn. 2.

property to a business use and then depreciate the property, thereby decreasing income for the purposes of the Internal Revenue Code. The Supreme Court of Ohio has found this acceptable in *Kamm v. Kamm* (1993), 67 Ohio St.3d 174, 616 N.E.2d 900. However, the Supreme Court of Ohio did not contemplate that the payor would be able to exclude the income permanently by shielding the depreciated amount from recapture upon sale of the depreciated asset.

Having defined "income" in a way which is at odds with the Internal Revenue Code, and therefore at odds with R.C. 3113.215(A)(2), the majority proceeds to apply this erroneous definition to reverse the appropriate decision of the trial court in the present case. Mr. Geiger, who consistently referred to the sums he received from the sale of his business assets as "income" in his testimony, recalls (and declares for income tax purposes) his financial dealings in a way that is obviously self-serving. He declared gross receipts for his business of approximately $30,000 for 1991, the year in question. From this gross receipt figure, he subtracted over $14,500 in car and truck expenses. This amounts to over 53,000 miles of business travel. By the time Mr. Geiger is done deducting his business expenses, he has generated himself a tax loss of almost $10,000. Some of this loss he recouped by collecting unemployment benefits of almost $7,300. Still his total income before adjustments in 1991 was only $1,679 according to his income tax returns.

Interestingly enough, Mr. Geiger still was able to deposit $112,421.13 into his checking account in 1991—over $70,000 more than can be detected by a review of his United States individual income tax return for 1991 and over $28,000 more than can be explained if the $42,000 from the sale of his business assets is included in the calculation. I believe that the trial court would have been well within its discretion to have included the unexplained $70,000 plus in Mr. Geiger's income, not just the $42,000 he admitted was income at the hearing and which the trial court and referee included as income in accord with his admission.

In sum, I believe that the trial court was well within its discretion in reaching its result and that the first assignment of error should be overruled.