TIMOTHY McKYER, Plaintiff v. FONTELLA McKYER, Defendant

No. COA05-810

(Filed 15 August 2006)

**1. Appeal and Error— appeal did not preclude subsequent proceedings—law of case doctrine—child custody—child support**

Plaintiff father's appeal of the August 2004 custody order did not preclude any subsequent proceedings in this matter including entry of the January 2005 permanent support order and

the February 2005 support order, because: (1) based on N.C.G.S. § 1-294, once a custody order is appealed, the trial court is divested of jurisdiction over all matters specifically affecting custody, but the court below may proceed upon any other matter included in the action and not affected by the judgment appealed from; (2) contrary to plaintiff's assertion, the law of the case doctrine did not require dismissal or stay of further proceedings while the appeal of the August 2004 custody order was pending when there is no ruling that can constitute the law of the case for further proceedings; and (3) the April 2001 custody order expressly addressed the issue of child support which was the subject of the December 2001 complaint that was dismissed, the December 2001 action fell within the scope of N.C.G.S. § 1-294, and plaintiff provided no argument regarding how his appeal of the August 2004 custody order, which did not address child support, divested the trial court of jurisdiction to decide questions of child support.

**2. Child Support, Custody, and Visitation— retroactive child support—refusal to modify order**

The trial court did not err by refusing to modify the April 2001 custody order to award plaintiff father retroactive child support from 17 April 2001, the date the initial custody order was entered, through 30 October 2003, the date plaintiff filed his motion seeking child support, because: (1) plaintiff presented no evidence of an emergency situation occurring between 17 April 2001 and 30 October 2003 and makes no argument suggesting the Court of Appeals recognize any other circumstances as justifying retroactive child support; (2) plaintiff did not offer any explanation as to why child support should be retroactive to 17 April 2001 as opposed to the date that defendant received the proceeds from the sale of the marital home, and plaintiff only offered evidence that defendant had an increase in income; and (3) although plaintiff contends alternatively that the trial court erred by failing to consider his evidence regarding the reasonable needs of the children and his actual expenses during this period, the court's failure to consider this evidence was at most harmless error when plaintiff made no showing that he was entitled to a retroactive increase in child support.

McKYER v. McKYER

[179 N.C. App. 132 (2006)]

**3. Child Support, Custody, and Visitation— Child Support Guidelines—nonrecurring income—conversion of asset to cash**

The trial court did not err by failing to consider defendant mother's receipt of $249,179.77, from the sale of the parties' residence arising out of the equitable distribution order, as nonrecurring income within the meaning of the North Carolina Child Support Guidelines for purposes of setting the amount of temporary and permanent child support owed by plaintiff father, because: (1) plaintiff failed to demonstrate that these sale proceeds constituted nonrecurring income when other jurisdictions have routinely held that conversion of an asset to cash does not render the cash income, and likewise, proceeds from the sale of an asset under both Federal and State income tax laws are not considered taxable income except to the extent the seller profits from the sale; (2) the mere fact that a nonrecurring payment has occurred, in the absence of evidence that the payment was income at all, is insufficient to establish that the payment was necessarily nonrecurring income; and (3) plaintiff did not argue why receipt of the $249,179.77 constituted income or how the gain from the unanticipated greater sales price constituted income. N.C.G.S. § 48-49.

**4. Child Support, Custody, and Visitation— calculation of child support—adjusted gross income—school grant**

The trial court erred in the January 2005 permanent support order when it calculated plaintiff father's income for child support purposes by treating an annual school grant of $1,800 as part of plaintiff's adjusted gross income without making the necessary findings of fact, and the case is remanded for further factual findings, because the trial court's findings of fact are insufficient to review whether it is properly classified as income for child support purposes under the Child Support Guidelines when it did not determine: (1) whether the sum was a benefit from means-tested public assistance programs; (2) whether it significantly reduced his personal living expenses; or (3) whether there are limits upon how plaintiff may use these funds.

**5. Child Support, Custody, and Visitation— imputed income—determination of amount**

Although the trial court's conclusion that income may be imputed to plaintiff father is affirmed, the trial court erred by imputing additional income of $1,040 per month to plaintiff

father in the January 2005 permanent support order without making sufficient findings of fact regarding the determination of the amount of income, and the case is remanded for additional findings of fact, because: (1) although the trial court stated plaintiff's employer was very flexible, it made no finding that this employer would permit plaintiff to work five days per week at $7.50 per hour rather than the one day per week he had been working prior to trial; (2) the finding that no evidence was presented that plaintiff could not work more hours at his employment was not sufficient to support the imputed amount; and (3) the trial court made no findings regarding either the availability of other full-time jobs that would pay plaintiff at least $7.50 per hour or the effect of plaintiff's status as a part-time student.

Judge TYSON concurring.

Appeal by plaintiff from orders entered 25 January 2005 and 14 February 2005, by Judges Jane V. Harper and Rebecca T. Tin, in Mecklenburg County District Court. Heard in the Court of Appeals 12 January 2006.

*Marnite Shuford for plaintiff-appellant.*

*Billie R. Ellerbe for defendant-appellee.*

GEER, Judge.

Plaintiff Timothy McKyer appeals from two child support orders: (1) an order concluding that he is not entitled to retroactive child support; and (2) an order calculating his permanent child support obligation. We hold that the trial court properly declined to award Mr. McKyer retroactive child support for a period when he had primary physical custody because Mr. McKyer failed to make the showing required by *Biggs v. Greer*, 136 N.C. App. 294, 524 S.E.2d 577 (2000). With respect to the permanent child support order, we uphold the trial court's decision to impute income to Mr. McKyer, but remand for further findings of fact regarding the calculation of the child support amount.

Facts

The McKyers were married in 1991 and separated in 2000. During the marriage, the couple had two sons, one born in 1995 and one born in 1998. From 1986 until 1998, Mr. McKyer played professional football for seven National Football League teams. In 1995, the couple

moved to Charlotte, North Carolina, while Mr. McKyer played for the Carolina Panthers. Although the family remained in Charlotte, Mr. McKyer later played for the Atlanta Falcons and, in 1998, won the Super Bowl with the Denver Broncos. In May 2000, the McKyers separated, and Mr. McKyer moved out of the marital home.

Mr. McKyer stopped playing football after the 1997-1998 season and hired an agent to help him find employment in communications as a radio host or football commentator. When that effort failed, he enrolled as a part-time student at the University of North Carolina in Charlotte; he continued to work towards a college degree throughout the proceedings below. At the time of the hearings at issue, Mr. McKyer worked one day per week at a local golf driving range as a "supervisor/manager/ball guy" and collected modest monthly payments from investments.

The McKyers' tortuous path through the North Carolina court system began in June 2000, when Mr. McKyer brought an action seeking primary custody of the couple's children. On 17 April 2001, District Court Judge Regan A. Miller entered an order awarding primary custody to Mr. McKyer and visitation to Ms. McKyer (the "April 2001 Custody Order"). The April 2001 Custody Order found that Mr. McKyer was "not voluntarily reducing or minimizing his income to avoid his financial obligations to his family," but also limited Ms. McKyer's obligation to provide child support "at this time to providing medical insurance through her employer for the children."

Ms. McKyer appealed from the April 2001 Custody Order. This Court affirmed, concluding that competent evidence in the record supported the trial court's findings of fact and that the trial court did not abuse its discretion by awarding custody to Mr. McKyer. *McKyer v. McKyer*, 152 N.C. App. 477, 567 S.E.2d 840, 2002 N.C. App. LEXIS 2134, 2002 WL 1901827 (2002) (unpublished) (hereinafter *"McKyer I"*), *disc. review denied*, 356 N.C. 438, 572 S.E.2d 785 (2002).

In the meantime, on 3 October 2001, Judge Miller entered an equitable distribution order (the "Equitable Distribution Order"). The Equitable Distribution Order distributed the parties' marital and divisible property and debts and ordered the sale of the marital home. As part of the equitable distribution, Ms. McKyer retained the larger share of the home and was to remit a distributive payment to Mr. McKyer of $41,961.00. On 31 October 2001, Mr. McKyer appealed the

Equitable Distribution Order.[1] This Court affirmed the Equitable Distribution Order in *McKyer v. McKyer*, 159 N.C. App. 466, 583 S.E.2d 427, 2003 N.C. App. LEXIS 1542, 2003 WL 21791638 (2003) (unpublished) (hereinafter "*McKyer II*"), *disc. review denied*, 358 N.C. 235, 593 S.E.2d 781 (2004).

On 5 December 2001, Mr. McKyer filed a new complaint seeking past and future child support, an order compelling Ms. McKyer to maintain medical insurance on the children, and *pro rata* reimbursement of the children's past and future uninsured medical expenses. On 13 February 2002, Judge Miller dismissed this complaint on the grounds that he lacked subject matter jurisdiction because the complaint sought to address issues raised in the appeal of the April 2001 Custody Order.

On 27 March 2003, Mr. McKyer filed a motion to modify the April 2001 Custody Order, seeking primarily to change the visitation provisions. Ms. McKyer's response requested that the court change primary custody of the two children to her and impute income to Mr. McKyer for purposes of calculating child support. On 30 October 2003, Mr. McKyer filed an additional "Motion in the Cause for Temporary and Permanent Child Support," seeking to have the April 2001 Custody Order modified and/or vacated and seeking "a temporary and permanent order of child support retroactive and prospective to April 17, 2001."

In August 2004, District Court Judge Rebecca T. Tin entered three orders, one addressing additional equitable distribution matters, the second addressing child custody (the "August 2004 Custody Order"), and the third providing for temporary child support (the "August 2004 Temporary Support Order"). In the August 2004 Custody Order, Judge Tin found: (1) a significant change of circumstances had occurred since the April 2001 Custody Order; (2) it was no longer in the best interests of the children that they be in the primary physical custody of Mr. McKyer; and (3) it was in the children's best interests that primary physical custody be granted to Ms. McKyer. Accordingly, the August 2004 Custody Order denied Mr. McKyer's initial motion for modification, granted Ms. McKyer's motion to change custody, and awarded Mr. McKyer visitation. Mr. McKyer appealed from this order on 23 August 2004.

---

1. It appears that Mr. McKyer may also have filed a motion to amend and alter the Equitable Distribution Order, although that motion is not included in the record on appeal. Mr. McKyer filed a notice of appeal from the denial of that motion on 15 January 2002.

In the August 2004 Temporary Support Order, Judge Tin found that any child support awarded to Mr. McKyer should be made retroactive to 30 October 2003 and calculated the amount owed by Ms. McKyer, under the Child Support Guidelines, for the period from 1 November 2003 until 31 May 2004. Judge Tin did not, at that time, address Mr. McKyer's request for retroactive child support for the period 17 April 2001 through 30 October 2003. Judge Tin further found that Mr. McKyer had a present temporary obligation to pay child support to Ms. McKyer beginning 10 June 2004 in the amount of $210.35 per month. The August 2004 Temporary Support Order reserved any ruling on defendant's motion to impute income to Mr. McKyer until the matter of permanent child support could be addressed, but provided that Mr. McKyer "is hereby ordered to seek gainful employment immediately. He shall provide the Court with at least thirty (30) places where he has sought employment."

Mr. McKyer immediately filed a motion to amend the August 2004 Temporary Support Order. He sought recalculation of the parties' child support obligations and the striking of the "seek employment order" based on the finding in the April 2001 Custody Order that Mr. McKyer was "not voluntarily reducing or minimizing his income to avoid his financial obligations to his family." On 5 October 2004, Mr. McKyer filed another motion entitled "Motion to Dismiss and/or Stay Temporary Child Support Order and Entry of Permanent Child Support Order Pending Appeal." He contended in the motion that he was entitled to have both the August 2004 Temporary Support Order and the entry of any permanent child support order dismissed or stayed because this Court had not yet resolved his appeal of the August 2004 Custody Order. Subsequently, however, Mr. McKyer's appeal of the August 2004 Custody Order was dismissed for failure to timely settle the record on appeal. On 31 August 2005, Mr. McKyer sought review of this dismissal by filing a petition for writ of certiorari. This Court denied the petition on 16 September 2005.

On 13 January 2005, District Court Judge Jane V. Harper conducted a hearing addressing Mr. McKyer's motion to amend the August 2004 Temporary Support Order, Mr. McKyer's October 2004 motion to dismiss or stay that order, and the issue of permanent child support. Judge Harper subsequently entered an order (the "January 2005 Permanent Support Order"), concluding that the trial court did not lose jurisdiction over the child support issues following Mr. McKyer's appeal of the custody order. The January 2005 Permanent Support Order modified the parties' prior child support obli-

gations, imputed income to Mr. McKyer, and calculated Mr. McKyer's permanent child support obligation. Mr. McKyer timely appealed this order.

On 14 February 2005, Judge Tin ruled on Mr. McKyer's 30 October 2003 motion to modify the April 2001 Custody Order to grant him child support from 17 April 2001 through 30 October 2003 (the "February 2005 Support Order"). The February 2005 Support Order concluded that Mr. McKyer was precluded, under *res judicata* principles, from receiving retroactive child support from the entry of the April 2001 Custody Order until 30 October 2003—the date Mr. McKyer had filed his motion seeking retroactive child support. With respect, however, to the period from 30 October 2003 until the entry of the August 2004 Custody Order switching custody to Ms. McKyer, the order concluded that Mr. McKyer was entitled to retroactive child support. Mr. McKyer also timely appealed the February 2005 Support Order.

I

**[1]** First, Mr. McKyer argues that his appeal of the August 2004 Custody Order precluded any subsequent proceedings in this matter, including entry of the January 2005 Permanent Support Order and the February 2005 Support Order. With respect to this issue, N.C. Gen. Stat. § 1-294 (2005) (emphasis added) provides: "When an appeal is perfected as provided by this Article it stays all further proceedings in the court below upon the judgment appealed from, or upon the matter embraced therein; *but the court below may proceed upon any other matter included in the action and not affected by the judgment appealed from.*" This Court has held, based on N.C. Gen. Stat. § 1-294, that "once a custody order is appealed, the trial court is divested of jurisdiction over all matters *specifically affecting custody.*" *Rosero v. Blake*, 150 N.C. App. 250, 252-53, 563 S.E.2d 248, 251 (2002) (emphasis added), *rev'd on other grounds*, 357 N.C. 193, 581 S.E.2d 41 (2003), *cert. denied*, 540 U.S. 1177, 158 L. Ed. 2d 78, 124 S. Ct. 1407 (2004).

In this case, Mr. McKyer does not contend that the 2005 child support orders exceeded the scope of the trial court's authority under N.C. Gen. Stat. § 1-294. Instead, Mr. McKyer argues that the law of the case doctrine required dismissal or stay of further proceedings while Mr. McKyer's appeal of the August 2004 Custody Order was pending. In support of this argument, Mr. McKyer points to the fact that when Ms. McKyer appealed the April 2001 Custody Order, the trial court

dismissed Mr. McKyer's new child support complaint for lack of subject matter jurisdiction. While Mr. McKyer claims that *McKyer II* summarily affirmed this dismissal, the record on appeal contains no notice of appeal from the dismissal and the text of *McKyer II* stated that it was only affirming the equitable distribution order.

The parties, however, seem to agree that the dismissal order was encompassed within this Court's concluding statement in *McKyer II* that "we have reviewed Mr. McKyer's remaining assignments of error and have found them to be without merit." *McKyer II*, 2003 N.C. App. LEXIS 1542 at *21-22, 2003 WL 21791638 at *8. Nonetheless, this conclusion provides no hint of the basis for any affirmance and, consequently, there is no ruling that can constitute the law of the case for further proceedings. *See Hayes v. City of Wilmington*, 243 N.C. 525, 536, 91 S.E.2d 673, 681-82 (1956) ("[A]s a general rule when an appellate court passes on a question and remands the cause for further proceedings, the questions there settled become the law of the case, both in subsequent proceedings in the trial court and on subsequent appeal . . . .").

In any event, the April 2001 Custody Order expressly addressed the issue of child support, the subject of the December 2001 complaint that was dismissed. That December 2001 action, therefore, fell within the scope of N.C. Gen. Stat. § 1-294. Because Mr. McKyer provides no argument regarding how his appeal of the August 2004 Custody Order, which did not address child support, divested the trial court of jurisdiction to decide questions of child support, this assignment of error is overruled.

II

[2] Second, Mr. McKyer argues that Judge Tin erred in refusing to modify the April 2001 Custody Order to award Mr. McKyer retroactive child support from 17 April 2001, the date the initial custody order was entered, through 30 October 2003, the date Mr. McKyer filed his motion seeking child support.[2] "Retroactive child support" is either (1) support awarded for a period prior to the date a party filed a complaint seeking child support, or (2) a retroactive increase in the

---

2. We note that Mr. McKyer also argues he was prejudiced by Judge Tin's delay in entering the February 2005 Support Order, which originated from hearings held in March and April 2004, but was not entered until February 2005. "[T]he scope of review on appeal is confined to a consideration of those assignments of error set out in the record on appeal . . . ." N.C.R. App. P. 10(a). As Mr. McKyer does not assign error to this delay, we decline to address that issue.

amount provided in an existing support order. *Cole v. Cole*, 149 N.C. App. 427, 433, 562 S.E.2d 11, 14 (2002).

In this case, the April 2001 Custody Order was an existing order providing for payment of child support by Ms. McKyer in the form of health insurance and payment of uninsured medical expenses. Mr. McKyer argues in passing that "[a]rguably, it can be stated that the order of 17 April 2001 was at best an interim order that could be mod-, ified and subject to retroactive child support at any time." *See Miller v. Miller*, 153 N.C. App. 40, 47-48, 568 S.E.2d 914, 919 (2002) (noting that although a permanent support order may not be retroactively modified in the absence of a substantial change in circumstances, a temporary support order may be retroactively modified without showing such a change). Mr. McKyer did not, however, make this argument below. *See* N.C.R. App. P. 10(b)(1) ("In order to preserve a question for appellate review, a party must have presented to the trial court a timely request, objection or motion, stating the specific grounds for the ruling the party desired the court to make if the specific grounds were not apparent from the context."). Nor is this contention consistent with the proceedings following the entry of the order: the order was appealed to this Court; an opinion was filed affirming the order; and, subsequently, the parties sought modification of the order based on substantial changes in circumstances.

Because the April 2001 Custody Order was not a mere interim order, we are addressing the second type of retroactive child support described in *Cole*, 149 N.C. App. at 433, 562 S.E.2d at 14. In *Biggs v. Greer*, 136 N.C. App. 294, 301, 524 S.E.2d 577, 583 (2000) (emphasis omitted), this Court, after surveying the law in other jurisdictions and prior opinions of our appellate courts, summarized the law in North Carolina governing "a retroactive increase in the amount provided in an existing support order":

> Motions for retroactive reimbursements or increases in child support where there is an existing court order should be allowed but sparingly and only under the limited circumstance constituting a true sudden "emergency situation that required the expenditure of sums in excess," of the existing child support order.

*Id.* at 303, 524 S.E.2d at 585 (citation omitted) (quoting *Fuchs v. Fuchs*, 260 N.C. 635, 641, 133 S.E.2d 487, 492 (1963)). The Court in *Biggs* reversed an award of retroactive child support because "the instant record reflects no competent evidence sufficient to support

findings sustaining the conclusion of law that there existed a sudden, extraordinary emergency constituting a substantial and material change in circumstances, affecting the welfare of the minor children." *Id.* at 305-06, 524 S.E.2d at 586 (internal citations and quotation marks omitted). *See also Fuchs v. Fuchs*, 260 N.C. 635, 641, 133 S.E.2d 487, 492 (1963) ("[T]he order making the increased [child support] retroactive to and including February 1963, without evidence of some emergency situation that required the expenditure of sums in excess of the amounts paid by the plaintiff for the support of his minor children, is neither warranted in law nor equity.").

In support of his argument that he demonstrated a substantial change of circumstances sufficient to warrant retroactive child support, Mr. McKyer points only to the fact that, subsequent to the April 2001 Custody Order, Ms. McKyer received $249,179.77 from the sale of the marital home, which he argues amounted to a substantial change in circumstances. Mr. McKyer presented no evidence of any emergency situation occurring between 17 April 2001 and 30 October 2003 and makes no argument suggesting that we recognize any other circumstances as justifying retroactive child support. Mr. McKyer has not even offered any explanation as to why child support should be retroactive to 17 April 2001, as opposed to the date that Ms. McKyer received the proceeds from the sale. In short, as occurred in *Fuchs* at 639, 133 S.E.2d at 491, Mr. McKyer has offered evidence only that the other spouse had an increase in income. *Fuchs* and *Biggs* require that we uphold the district court's refusal to award retroactive child support.[3]

Mr. McKyer argues alternatively that the trial court erred when deciding this issue by not considering his evidence regarding the reasonable needs of the children and his actual expenses during the period 17 April 2001 through 30 October 2003. Because Mr. McKyer had made no showing that he was entitled to a retroactive increase in child support, the court's failure to consider this evidence was at most harmless error. As Mr. McKyer makes no other argument explaining why the April 2001 Custody Order should have been modified to provide child support prior to 1 November 2003, this assignment of error is overruled.

---

3. Based upon our review of the transcript, we believe that this principle is what Judge Tin was relying upon when she concluded that *res judicata* precluded Mr. McKyer from receiving retroactive child support for the period following Judge Miller's 17 April 2001 order, which Mr. McKyer did not appeal.

III

**[3]** Mr. McKyer also argues that the district court erred in failing to consider Ms. McKyer's receipt of $249,179.77 as non-recurring income within the meaning of the North Carolina Child Support Guidelines for purposes of setting the amount of temporary and permanent child support owed by Mr. McKyer. *See* N.C. Child Support Guidelines, 2006 Ann. R. N.C. at 48-49 (noting that when "income is received on an irregular, non-recurring, or one-time basis, the court may average or prorate the income over a specified period of time or require an obligor to pay as child support a percentage of his or her non-recurring income that is equivalent to the percentage of his or her recurring income paid for child support"). We hold that Mr. McKyer has failed to demonstrate that these sales proceeds constituted non-recurring income.

In the equitable distribution proceedings, the McKyers' marital residence was principally distributed to Ms. McKyer with an order that it be sold.[4] Although our courts have never addressed whether, in the child support context, the conversion of an asset to cash renders the cash income, courts in other jurisdictions have routinely held that it does not. *See, e.g., Rimpf v. Campbell*, 853 So. 2d 957, 961 (Ala. Civ. App. 2002) (noting that "the change in the character of an asset . . . awarded in a divorce judgment does not transform the asset into income"); *Denley v. Denley*, 38 Conn. App. 349, 353, 661 A.2d 628, 631 (1995) ("The mere exchange of an asset awarded as property in a dissolution decree, for cash, the liquid form of the asset, does not transform the property into income."); *Geiger v. Geiger*, 96 Ohio App. 3d 630, 635, 645 N.E.2d 818, 822 (1994) ("Converting a tangible or intangible asset into cash is not income except to the extent, if any, that there is a profit or gain."). Likewise, proceeds from the sale of an asset under both Federal and State income tax laws are not considered taxable income except to the extent the seller profits from the sale. *See Commissioner v. Wilcox*, 327 U.S. 404, 407, 90 L. Ed. 752, 755, 66 S. Ct. 546, 548 (1946) ("The very essence of taxable income . . . is the accrual of some gain, profit or benefit to the taxpayer."), *overruled on other grounds by James v. United States*, 366 U.S. 213, 6 L. Ed. 2d 246, 81 S. Ct. 1052 (1961). *See*

---

4. While Mr. McKyer cited to N.C. Gen. Stat. § 50-20(f) (2005) (providing that "[a]fter the determination of an equitable distribution, the court, upon request of either party, shall consider whether an order for alimony or child support should be modified or vacated pursuant to G.S. 50-16.9 or 50-13.7") in connection with his request for retroactive child support, he relies only on his "non-incurring income" theory with respect to this assignment of error.

*also* N.C. Gen. Stat. § 105-134.5(a) (2005) (defining "taxable income" by reference to federal standard).

In short, the mere fact that a non-recurring payment has occurred, in the absence of evidence that the payment was "income" at all, is alone insufficient to establish that the payment was necessarily non-recurring income. *See* N.C. Child Support Guidelines, 2006 Ann. R. N.C. at 48-49 (addressing "non-recurring income" under the heading of "Gross Income"). Mr. McKyer makes no argument as to why receipt of the $249,179.77 constitutes "income." Further, although we note that Ms. McKyer was able to obtain a greater sales price than anticipated by the Equitable Distribution Order, since Mr. McKyer has not argued that this increase constitutes "income," we reserve for another day the decision about how to treat, for child support purposes, the type of "gain" experienced by Ms. McKyer on the sale of a distributed marital asset. *See Viar v. N.C. Dep't of Transp.*, 359 N.C. 400, 402, 610 S.E.2d 360, 361 (2005) ("It is not the role of the appellate courts . . . to create an appeal for an appellant.").

IV

Mr. McKyer next argues that Judge Harper erred in her January 2005 Permanent Support Order when calculating his income for child support purposes by (1) treating an annual school grant of $1,800.00 as income and (2) improperly imputing to him $1,040.00 of additional income per month. We address these arguments separately.

A. Mr. McKyer's School Grant

[4] The trial court's consideration of a school grant of $1,800.00 in calculating child support requires us to decide whether that grant constituted part of Mr. McKyer's adjusted gross income. N.C. Child Support Guidelines, 2006 Ann. R. N.C. at 48. The Guidelines define gross income expansively to include "income from any source . . . ." *Id.* Additionally, "[e]xpense reimbursements or in-kind payments (for example, use of a company car, free housing, or reimbursed meals) received by a parent in the course of employment, self-employment, or operation of a business are counted as income if they are significant and reduce personal living expenses." *Id.* at 49. On the other hand, the Guidelines specifically exclude from the definition of income "benefits received from means-tested public assistance programs." *Id. See also* 2 Suzanne Reynolds, *Lee's North Carolina Family Law* § 10.8, at 533-34 (5th ed. 1999) (discussing calculation of income under the Guidelines).

McKYER v. McKYER

[179 N.C. App. 132 (2006)]

North Carolina case law has not addressed whether educational grants are income under the Guidelines. Although both parties cite *Wachacha v. Wachacha*, 38 N.C. App. 504, 248 S.E.2d 375 (1978), we do not find this case instructive. The father in *Wachacha* had quit his job and returned to school, and this Court, in describing the evidence presented, recited that the father had "arranged to meet his support and alimony obligations from his income under the GI bill." *Id.* at 508, 248 S.E.2d at 378. The father in *Wachacha* was not, however, appealing or raising any question about whether the money he received under the GI Bill could properly be considered income, and the opinion contains no holding on that issue. *Id.*

Other states have considered whether educational grants are income for child support purposes, with several concluding that such grants are income because they need not be repaid. *Compare In re Marriage of Syverson*, 281 Mont. 1, 12, 931 P.2d 691, 698 (1997) (concluding that educational grants, which were not loans and were not expected to be repaid, constituted income for purposes of child support) *with In re Marriage of Rocha*, 68 Cal. App. 4th 514, 517, 80 Cal. Rptr. 2d 376, 377 (1998) (concluding student loans, unlike grants, were not income for child support purposes because they needed to be repaid). On the other hand, other states have concluded that some types of grants and tuition reimbursements are not income for child support purposes, regardless whether they need to be repaid. *See In re Marriage of Mellott*, 32 Kan. App. 2d 1031, 1033-34, 93 P.3d 1219, 1221-22 (2004) (concluding, based on child support guidelines similar to North Carolina's, that tuition reimbursements from an employer not exceeding cost of tuition are not income for child support purposes because they "do not reduce a person's living expenses" since "adult college education does not fall into the same category as expenses for housing, food, and transportation, which are included as imputed income if reimbursed"). *See also* Wyo. Stat. Ann. § 20-2-303(a)(ii) (2005) ("Means tested sources of income such as Pell grants, aid under the personal opportunities with employment responsibilities (POWER) program, food stamps and supplemental security income (SSI) shall not be considered as income.").

In any event, the findings of fact of the trial court regarding Mr. McKyer's $1,800.00 grant are insufficient for us to review whether it is properly classified as income for child support purposes under our Child Support Guidelines. The trial court made no findings as to whether this sum was a "benefit . . . from means-tested public assistance programs," whether it significantly reduced his "personal living

expenses," or whether there are any limits upon how Mr. McKyer may use these funds. We, therefore, remand this issue to the trial court for further factual findings.

### B. Imputation of Income

[5] Mr. McKyer also argues that the trial court erred in imputing $1,040.00 per month income to him in the January 2005 Permanent Support Order. Judge Harper concluded, based on her findings of fact, that "[p]laintiff has deliberately suppressed his income and acted in deliberate disregard of his obligation to provide reasonable support to his children. Defendant is entitled to have the court impute additional income to plaintiff in order that reasonable support may be provided for the parties' children."

Generally, a party's ability to pay child support is determined by that party's actual income at the time the award is made. *Atwell v. Atwell*, 74 N.C. App. 231, 235, .328 S.E.2d 47, 50 (1985). A party's capacity to earn may, however, be the basis for an award where the party "deliberately depressed his income or deliberately acted in disregard of his obligation to provide support." *Sharpe v. Nobles*, 127 N.C. App. 705, 708, 493 S.E.2d 288, 290 (1997).

Before earning capacity may be used as the basis of an award, there must be a showing that the actions reducing the party's income were taken in bad faith to avoid family responsibilities. *Bowers v. Bowers*, 141 N.C. App. 729, 732, 541 S.E.2d 508, 510 (2001). Yet, this showing may be met by a sufficient degree of indifference to the needs of a parent's children. In *Roberts v. McAllister*, 174 N.C. App. 369, 621 S.E.2d 191 (2005), *appeal dismissed*, 360 N.C. 364, 629 S.E.2d 608 (2006), the supporting spouse had remarried a wealthy doctor and ceased working. The trial court found that, by failing to seek or obtain employment, she had demonstrated a "naive indifference" to the needs of her children. *Id.* at 379, 621 S.E.2d at 198. This Court affirmed the trial court's conclusion that this indifference amounted to an "intentional and willful avoidance and showed a deliberate disregard of her responsibility to support her children," and held that this was a sufficient basis upon which to impute income. *Id.*

Judge Harper made the following findings of fact to support her decision to impute income:

11. In addition to paying his own monthly mortgage and household bills, and $55/month child support, H spent about $2500 on

the children's Christmas gifts in 2004. The court notes that H's $55/month payment is less than W spends for the children's health insurance. The court also notes that H spent more for the boys' Christmas gifts than he believes he should pay in child support over a period of 45 months, at $55/month, or 17 months at $145/month, the figure on the worksheet Ms. Shuford [Mr. McKyer's attorney] submitted after the January hearing. The $145 figure is less than half what W must spend for child care. It is less than a fourth what she must spend for the boy's [sic] vision and occupational therapy. It is not enough to meet the children's reasonable needs and expenses. Even the amount calculated by Mr. Ellerbe [Ms. KcKyer's attorney], $588.85, does not even cover the extraordinary expenses for vision and occupational therapy for the boys.

12. Mr. Ellerbe's calculation includes imputing a modest additional amount of income to H: five days a week at the driving range rather than one day, at $7.50/hour, for a total of $1300/month rather than the $260/month he actually earns. H's employer at the driving range is very flexible. H can, and does, take the boys with him to the driving range, which they enjoy. No evidence was presented that H could not work more hours at this employment.

13. What was reasonable for H to do about income several years ago is no longer reasonable. He has not made concentrated efforts to complete his education. He has declined to seek work other than the one-day-a-week job he currently has, which began a few months ago. He paid less than a third of the child support ordered by Judge Tin. He shows no intention of contributing significantly to his sons' financial needs.

These findings are supported by competent evidence and, consequently, are binding on appeal. *Meehan v. Lawrance*, 166 N.C. App. 369, 375, 602 S.E.2d 21, 25 (2004). In turn, these findings provide ample support for the trial court's decision to impute income to Mr. McKyer. Contrary to defendant's argument, the fact that Judge Miller did not believe in 2001 that Mr. McKyer was "not voluntarily reducing or minimizing his income to avoid his financial obligations to his family" does not preclude a contrary finding four years later.

Nevertheless, the findings of fact on this issue are insufficient to support the trial court's determination of *the amount of income* that

should be imputed to Mr. McKyer. A trial court must "make sufficient findings of fact and conclusions of law to allow the reviewing court to determine whether a judgment, and the legal conclusions that underlie it, represent a correct application of the law." *Spicer v. Spicer*, 168 N.C. App. 283, 287, 607 S.E.2d 678, 682 (2005).

The trial court's basis for imputing $1,040.00 of additional monthly income to Mr. McKyer was only that his employer at the driving range was "very flexible." The court made no finding that this employer would permit Mr. McKyer to work five days per week, at $7.50 per hour, rather than the one day per week he had been working prior to trial. Rather, the court found that "[n]o evidence was presented that [Mr. McKyer] could not work more hours at this employment." This finding is not sufficient to support the amount imputed. While Mr. McKyer did indeed state that his job at the golf range as a "supervisor/manager/ball guy" provided him with flexible hours, we see no basis to conclude that this necessarily means Mr. McKyer could move from a very limited, one day per week part-time job to full-time employment at the range. *See McDonald v. Taylor*, 106 N.C. App. 18, 26, 415 S.E.2d 81, 85 (1992) ("The determination of the ability to pay must be supported by the evidence presented."). Moreover, the trial court made no findings regarding either the availability of other full-time jobs that would pay Mr. McKyer at least $7.50 per hour or the effect of Mr. McKyer's status as a part-time student.

While we understand the trial court's view that Mr. McKyer could likely work more hours per week than he did prior to the January 2005 Permanent Support Order, the trial court failed to make sufficient findings for us to conclude that the judgment, as it presently stands, "represent[s] a correct application of the law." *Spicer*, 168 N.C. App. at 287, 607 S.E.2d at 682. Accordingly, although we affirm the trial court's conclusion that income may be imputed to Mr. McKyer, we must remand for additional findings of fact regarding the proper amount.

Affirmed in part, remanded in part.

Judge HUDSON concurs.

Judge TYSON concurs in the result only in separate opinion.

McKYER v. McKYER

[179 N.C. App. 132 (2006)]

TYSON, Judge concurring in the result only.

The majority's opinion remands to the trial court for a determination of whether the plaintiff's educational grant was a " 'benefit . . . from means-tested public assistance programs,' whether it significantly reduced his 'personal living expenses,' or whether there are any limits upon how [plaintiff] may use these funds." I disagree with the majority's rationale and basis for remanding this issue. I vote to remand this issue for a determination of whether plaintiff's educational grant is subject to income taxation.

The majority's opinion also affirms the trial court's conclusion that income may be imputed to plaintiff and remands for additional findings of fact regarding the proper amount of income to be imputed. I also disagree with the majority's rationale for remanding this issue. I vote to remand this issue for a determination of whether the trial court had jurisdiction to consider imputation of income in light of the prior adjudication of this issue in its April 2001 custody order, whether defendant has shown a substantial change of circumstances to invoke modification, and whether defendant is judicially estopped from re-asserting this issue. *Whiteacre P'ship v. Biosignia, Inc.*, 358 N.C. 1, 29, 591 S.E.2d 870, 889 (2004).

## I. Plaintiff's Educational Grant

The majority's opinion notes that our appellate courts have not addressed the issue of whether an educational grant is considered income under the Child Support Guidelines. The majority's opinion cites holdings from other jurisdictions and lists following three factors for the trial court to consider on remand: (1) whether the sum "was a 'benefit . . . from means-tested public assistance programs,'" (2) "whether it significantly reduced [plaintiff's] personal living expenses;" and (3) "whether there are any limits upon how [plaintiff] may use these funds." However, the majority's opinion fails to determine whether an educational grant is income to plaintiff.

The determination of whether an educational grant is considered income for the purpose of the Child Support Guidelines turns on whether the grant is subject to federal income taxation. The Internal Revenue Code, 26 U.S.C. § 117 (2006), provides as follows:

(a) General rule. Gross income does not include any amount received as a qualified scholarship by an individual who is a candidate for a degree at an educational organization described in section 170(b)(1)(A)(ii).

(b)  Qualified scholarship. For purposes of this section—

(1) In general. The term "qualified scholarship" means any amount received by an individual as a scholarship or fellowship grant to the extent the individual establishes that, in accordance with the conditions of the grant, such amount was used for qualified tuition and related expenses.

(2) Qualified tuition and related expenses. For purposes of paragraph (1), the term "qualified tuition and related expenses" means—

(A)  tuition and fees required for the enrollment or attendance of a student at an educational organization described in section 170(b)(1)(A)(ii), and

(B)  fees, books, supplies, and equipment required for courses of instruction at such an educational organization.

I would hold that an educational grant is income to under the Child Support Guidelines only if it is subject to federal income taxation. I would hold that it is not income if the grant is not subject to federal income taxation. I vote to remand this issue to the trial court for findings of whether plaintiff's educational grant is income under the provisions of 26 U.S.C. § 117.

## II.  Imputation of Income

The majority's opinion affirms the trial court's conclusion that income may be imputed to plaintiff and remands for additional findings of fact regarding the proper amount of income which should be imputed. The record does not contain findings that the trial court properly considered this issue.

In its 17 April 2001 order, the trial court found as fact, "Husband is not voluntarily reducing or minimizing his income to avoid his financial obligations to his family." In its 25 January 2005 order, the trial court concluded, plaintiff has "deliberately suppressed his income and acted in deliberate disregard of his obligation to provide reasonable support to his children."

" 'Modification of a child support order involves a two-step process. The court must first determine a substantial change of circumstances has taken place; only then does it proceed to . . . calculate the applicable amount of support.' " *Trevillian v. Trevillian*, 164 N.C. App. 223, 225, 595 S.E.2d 206, 207 (2004) (quoting *McGee v.*

*McGee*, 118 N.C. App. 19, 26-27, 453 S.E.2d 531, 535-36 (1995), *disc. rev. denied*, 340 N.C. 359, 458 S.E.2d 189 (1995)). The burden of showing a substantial change of circumstances rests with the party seeking modification. *Id.* at 224, 595 S.E.2d at 207. In its 25 January 2005 order, the trial court failed to make a finding that defendant has alleged or shown a substantial change in circumstances had occurred in order to revisit the child support issue and impute income to plaintiff. I vote to remand this issue to the trial court for a finding of defendant asserting and showing a substantial change in circumstances has occurred and whether defendant is judicially estopped from asserting this issue. *Whiteacre P'ship*, 358 N.C. at 26, 591 S.E.2d at 887.

### III. Conclusion

I vote to hold plaintiff's educational grant is income under the Child Support Guidelines only if it is subject to federal income taxation and remand this issue to the trial court for a determination of whether plaintiff's educational grant falls under the provisions of 26 U.S.C. § 117.

I also vote to remand the issue of imputation of income to the trial court for a finding of whether defendant asserted and showed a substantial change in circumstances had occurred since entry of the 17 April 2001 order and whether defendant is judicially estopped from having the trial court to reconsider the issue of imputation of income to plaintiff.